Filed 7/27/23  P. v. Ayala CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D081044 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCS322001) |
| JUVENAL AYALA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Dwayne K Moring, Judge.  Affirmed.

Deanna L. Lopas, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

### INTRODUCTION

A jury found Juvenal Ayala guilty of robbery (§ Pen. Code,[1] § 211; count 1); grand theft of personal property (§ 487, subd. (a); count 2); and two counts of shoplifting (§ 459.5; counts 3 & 4).  Ayala admitted he was previously convicted of one serious felony (§§ 667, subd. (a)(1), 668, and

---

[1]    Undesignated statutory references are to the Penal Code.

1192.7, subd. (c)) that qualified as a strike prior (§§ 667, subds. (b)-(i), 1170.12, and 668). In a bifurcated proceeding, the trial court found true an allegation that Ayala committed count 1 while he was on parole (§ 1203.085, subd. (b)), and several circumstances in aggravation within the meaning of California Rules of Court, rule 4.421. The court sentenced Ayala to an aggregate term of 8 years, 4 months, in state prison.

Ayala's counsel on appeal has filed an opening brief asking this court to conduct an independent review of the record pursuant to *Anders v. California* (1967) 386 U.S. 738 (*Anders*) and *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). We granted Ayala the opportunity to file a supplemental brief on his own behalf and he has done so. We have reviewed the entire record as required by *Wende* and *Anders,* as well as the briefing submitted by counsel and Ayala, and we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

I.

*Shoplifting Offenses (Counts 3-4)*

On December 9, 2021, an asset protection employee for the Old Navy department store reviewed surveillance video of a theft at their Las Americas Mall location. The surveillance video depicted a man, whom the employee identified as Ayala, enter the store at approximately 8:01 p.m. Ayala removed two brown paper bags from his pocket and placed 11 pieces of Old Navy merchandise into the bags. Ayala exited the store with the two bags of concealed merchandise, valued at $292.92, without attempting to pay.

On January 20, 2022, the asset protection employee reviewed surveillance video of another theft at the same Old Navy store. She observed Ayala enter the store at around 12:19 p.m. and remove a plastic bag from his pocket. He concealed nine items of clothing in the bag, valued at $281.91.

2

Ayala left the store with the concealed merchandise without attempting to pay.

The surveillance video footage of both thefts were played for the jury, and "screenshots" of the footage were moved into evidence. The asset protection employee identified Ayala, in court, as the individual depicted in the surveillance videos concealing and taking merchandise from the store.

## II.

### *Grand Theft (Count 2)*

On February 14, 2022, a loss prevention officer employed by the Marshall's department store reviewed video surveillance of thefts that occurred on February 5, February 8, and February 9, 2022. The loss prevention officer identified Ayala, in court, as the individual depicted in the videos committing the thefts.

On February 5, 2022, Ayala was seen entering the Marshall's department store carrying an empty bag. He placed the bag in a shopping cart and concealed 21 items, valued at $317.79. Ayala left the store with the concealed merchandise without attempting to pay.

During the February 8, 2022, incident, Ayala appeared to be dressed in the same clothing as the February 5, 2022, theft. He entered the Mashall's department store and placed items of clothing and other merchandise into a shopping cart. He spoke with an unidentified man who handed him additional items, and he then exited the store with 28 pieces of merchandise without attempting to pay. The value of the merchandise was $417.

On February 9, 2022, Ayala entered the Marshall's store and placed 28 items of merchandise into a bag. He left the store without attempting to pay for the concealed items. The merchandise was valued at $479.73.

The loss prevention officer also testified regarding uncharged conduct that occurred on February 14, 2022. She was informed that Ayala was present in the Marshall's store and she observed him place several items of merchandise into a bag through live surveillance video. The investigator approached Ayala in the store, and he laughed and continued to conceal items in his bag. She observed him exit the store without paying for 22 items, valued at $574.78.

The surveillance video of each incident was played for the jury. During each theft, the store alarm system sounded when Ayala exited the store because sensors attached to the unpaid merchandise were not removed.

### III.

### *Robbery (Count 1)*

On March 30, 2022, a security officer providing support to a shopping center near the Marshall's department store was informed that Ayala was at a 7-Eleven convenience store on the premises. The officer worked for a security company that had a contract with the shopping center, and the Marshall's department store within the center, to assist with theft prevention. The security officer asked Ayala to leave the premises and Ayala complied. Around an hour later, he observed Ayala hiding behind a trashcan near the Marshall's department store before the store opened. The officer escorted him away from the store, but Ayala returned again at 9:35 a.m.

The security officer observed Ayala enter the Marshall's department store and the officer informed the store manager of his presence. He kept in radio communication with the store manager and waited outside of the store for Ayala to exit. The officer observed the store alarms sound as Ayala exited the store with two bags of merchandise without attempting to pay.

4

The security officer approached Ayala and asked him to return to the store with the merchandise. He informed Ayala that the theft was captured on the surveillance cameras. Ayala responded, "No. I'm not going to give it to you. I'm taking it. This is what I need, and I'll be back tomorrow for more." The security officer told Ayala he was "not intimidating to [him]," and he asked Ayala to leave the mall and not return if he didn't intend to return the merchandise.

The security officer continued to follow and speak with Ayala at a distance of around five to six feet. During this conversation, Ayala put his hand in his pocket and told the officer, "Don't come close because[] if you do, I'm going to hurt you." Ayala then removed his hand from his pocket and continued walking. The security officer testified that he believed Ayala was serious and that if he got closer Ayala would hurt him.

Two San Diego police officers received a description of Ayala and responded to the scene at approximately 10:30 a.m. One of the officers had prior contact with Ayala and observed him from the patrol car. The officer called Ayala by name and he responded. The officers detained and searched Ayala and two bags in his possession. They found Marshall's merchandise in the bags, with store tags and security tags still attached. Ayala did not have any credit cards, cash, or merchandise receipts in his possession, nor did he possess any weapons.

The responding police officers interviewed the security officer at the scene. The security officer stated that Ayala told him he planned to take the merchandise to "TJ" to resell it. The security officer did not mention in his statement to the officers that he was fearful during his interaction with Ayala.

5

## IV.

### *Bifurcated Court Trial*

Following the jury's guilty verdicts on counts 1 through 4, the trial court conducted a bifurcated court proceeding on Ayala's prior convictions and the circumstances in aggravation that were alleged in the amended information.  Ayala waived his right to a jury trial and admitted that he suffered a serious prior felony conviction that qualified as a strike.  He further admitted that his conviction offense involved great violence, great bodily harm, threat of great bodily harm, or other facts disclosing a high degree of cruelty, viciousness, or callousness, within the meaning of California Rules of Court, rule 4.421(a)(1).  He admitted an allegation that he was on probation or parole when the underlying offenses were committed.

The court found true, beyond a reasonable doubt, allegations that Ayala: (1) engaged in violent conduct within the meaning of Rule 4.421(b)(1); (2) suffered a prison prior; and (3) performed unsatisfactorily while on probation or parole pursuant to Rule 4.421(b)(5).

## V.

### *Sentencing*

The trial court sentenced Ayala to an aggregate term of 8 years 4 months, in state prison.  The court arrived at this sentence by imposing the middle term of 3 years on count 1, doubled due to the strike prior, for a total of 6 years; one-third the middle term on count 2, for a total of one years, four months; and a one-year consecutive sentence for another case that is not the subject of this appeal.  On counts 3 and 4 (the misdemeanor shoplifting charges), the court denied probation and sentenced him to credit for time served.  The court exercised its discretion to dismiss the serious felony prior pursuant to section 1385.

6

Appointed appellate counsel filed a brief summarizing the facts and proceedings in the trial court. Counsel raised no specific issues on appeal, and instead identified five possible, but not arguable, issues pursuant to *Anders, supra*, 386 U.S. 738, as follows, whether: (1) joinder of the various theft charges on different offense dates was appropriate, and, if not, whether counsel was ineffective for failing to request a severance; (2) there was sufficient evidence to prove force or fear as it relates to the robbery charge; (3) all necessary jury instructions were given; (4) there was sufficient evidence to support each aggravating factor the trial court found true; and (5) the trial court abused its discretion at sentencing.

We granted Ayala permission to file a brief on his own behalf and he filed a 4-page handwritten brief. As best can be discerned, Ayala contends there was insufficient evidence to support a conviction for robbery because the security officer involved in the offense was not in fear during the incident and because he testified falsely. Ayala alleges that the security officer was familiar with his criminal history and was motivated to lie so that Ayala would not come back to the shopping center. Ayala further proffers that he was not carrying a weapon during the offense.

When the appellant raises specific issues in a *Wende* proceeding, we must expressly address them in our opinion and if they fail, explain why. (*People v. Kelly* (2006) 40 Cal.4th 106, 110, 120, 124.) Below we address the issues identified by appellate counsel and Ayala, and as we discuss, conclude the issues lack arguable merit.

7

# I.

## *Joinder of Counts 2-4*

Ayala was initially charged in a criminal complaint with one count of robbery. An amended complaint, and an information thereafter, added charges of grand theft and two counts of shoplifting occurring on different offense dates. Ayala did not request severance of the additional theft charges at any point during the proceeding. Appellate counsel suggests as a possible issue that joinder of the various theft-related offenses in the amended complaint and information was inappropriate, and that defense counsel was ineffective for failing to move for severance of the added charges. We conclude the issue is not reasonably arguable.

A.  *General Legal Principles*

"Section 954, in relevant part, permits the joinder of 'two or more different offenses of the same class of crimes or offenses.' " (*People v. Simon* (2016) 1 Cal.5th 98, 122 (*Simon*); see also § 954.) If charged offenses are connected together in their commission, or of the same class, the presumption is that they will be tried together because separate trials would waste judicial resources. (*People v. Soper* (2009) 45 Cal.4th 759, 771–772 (*Soper*); see also *Simon, supra,* 1 Cal.5th at p. 122 ["Joinder is ordinarily favored because it avoids the increased expenditures of funds and judicial resources that may result from separate trials."].) "Joinder, therefore, 'is the course of action preferred by the law.' " (*Simon,* at p. 122.)

However, even where the statutory requirements of section 954 have been met, "a trial court has discretion to sever properly joined charges in the interest of justice and for good cause." (*Simon, supra,* 1 Cal.5th at p. 122.) "The burden is on the party seeking severance to clearly establish that there is a substantial danger of prejudice requiring that the charges be separately

tried." (*Soper*, *supra,* 45 Cal.4th at p. 773.) A trial court has no sua sponte duty to order charged offenses severed. (*People v. Maury* (2003) 30 Cal.4th 342, 392.)

"A defendant, to establish error in a trial court's ruling declining to sever properly joined charges, must make a ' "clear showing of prejudice to establish that the trial court *abused its discretion . . . .*" ' " (*Soper, supra,* 45 Cal.4th p. 774.) "In determining whether a court abused its discretion in declining to sever properly joined charges, [the reviewing court] first consider[s] the 'cross-admissibility of the evidence in hypothetical separate trials.' [Citation.] If the evidence is cross-admissible, then this 'is normally sufficient to dispel any suggestion of prejudice and to justify a trial court's refusal to sever properly joined charges.' [Citation.] If not, then we also consider '(1) whether some of the charges are particularly likely to inflame the jury against the defendant; (2) whether a weak case has been joined with a strong case or another weak case so that the totality of the evidence may alter the outcome as to some or all of the charges; or (3) whether one of the charges (but not another) is a capital offense, or the joinder of the charges converts the matter into a capital case.' [Citation.]" (*People v. Gomez* (2018) 6 Cal.5th 243, 275–276.)

A party's failure to request severance forfeits the issue on appeal. (*Maury, supra,* 30 Cal.4th at p. 392 ["defendant's failure to request a severance waives the matter on appeal"].) A claim of ineffective assistance of counsel for failing to request severance will not prevail when the trial court would not have abused its discretion by denying a motion to sever. (*Ibid.*) However, " '[e]ven if a defendant fails to demonstrate the trial court's joinder ruling was an abuse of discretion when it was made, reversal may nonetheless be required if the defendant can demonstrate that 'the joint trial

9

resulted in such gross unfairness as to amount to a due process violation.' [Citation.]" (*Gomez, supra,* 6 Cal.5th at p. 276.)

B.     *Analysis*

Here, the trial court had no sua sponte duty to order the theft-related offenses severed, and Ayala forfeited his challenge to the joinder of the charges by failing to request severance in the trial court.  (See *Maury, supra,* 30 Cal.4th at p. 392.)  Nonetheless, we consider the merits of this potential claim because appellate counsel raises ineffective assistance of counsel as a possible issue.  As we discuss, because we conclude joinder of the charges was not in error, the "related claims of ineffective assistance of counsel fail and do not require further discussion." (*People v. Ledesma* (2006) 39 Cal.4th 641, 748.)

The charges at issue in the instant case—robbery, grand theft, and shoplifting—are all within the same class of offenses because they share the common characteristic of the wrongful taking of another's property.  (See *People v. Koontz* (2002) 27 Cal.4th 1041, 1075 [robbery and petty theft "fall within the same class, in that they share the common characteristic of the wrongful taking of another's property"].)  Joinder was therefore proper because the statutory joinder requirements under section 954 have been met.  (§ 954 ["An accusatory pleading may charge two or more different offenses . . . of the same class of crimes or offenses . . . ."].)  Accordingly, because all of the offenses charged in the information fell within the same class of offenses, there was a presumption favoring the joinder of the charges for trial.  (*Soper, supra*, 45 Cal.4th at pp. 771–772.)

Further, even if Ayala had moved for severance of the properly joined charges, the trial court would not have abused its discretion by denying his request.  A substantial portion of the evidence against Ayala undoubtedly

10

would have been cross-admissible in hypothetical separate trials under Evidence Code section 1101 to prove common plan or scheme and intent. (Evid. Code, § 1101, subd. (b), [permitting evidence of other crimes to prove some fact other than criminal propensity, such as common plan or scheme, intent, or identity].)  Between December 2021, and March 2022, Ayala entered various clothing stores in and around the Las Americas Mall.  During each offense, he brought with him a bag that he used to conceal merchandise, and in at least two of the offenses, Ayala wore the same clothing.  He refused to leave or return the merchandise even when the security alarm sounded and he was confronted by security, and he repeatedly targeted the Marshall's and Old Navy department stores.  Ayala's conduct during these repeated offenses bore such similarity "as naturally to be explained . . . by a general plan, the similarity [of which] is not merely coincidental, but indicates that the conduct was directed by design." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 396.)  And considering Ayala's statement in his supplement brief on appeal suggesting he "took hygiene items and some clothes" out of necessity because he "live[d] on the streets," his repeated conduct was probative of his intent to permanently deprive the stores of their merchandise.  (*Id.* at p. 406 ["Evidence of intent is relevant to establish that, assuming the defendant committed the alleged conduct, he or she harbored the requisite intent."].)

If evidence relating to the joined offenses is cross-admissible, as was the case here, "then this 'is normally sufficient to dispel any suggestion of prejudice and to justify a trial court's refusal to sever properly joined charges.'" (*Gomez, supra*, 6 Cal.5th at pp. 275–276; see also *Soper, supra*, 45 Cal.4th at pp. 774–775 [cross-admissibility "alone is normally sufficient to dispel any suggestion of prejudice and to justify a trial court's refusal to sever properly joined charges"].)  But even if this evidence was not cross-

11

admissible, "the absence of cross-admissible evidence does not bar joinder." (*People v. O'Malley* (2016) 62 Cal.4th 944, 968.)  For example, in *People v. Bean* (1988) 46 Cal.3d 919 at page 939, the trial court's denial of a severance motion was upheld despite the lack of cross-admissibility, because it was not a case in which, "at the time the ruling was made, the evidence of defendant's guilt of one or more of the joined offenses was weak, while evidence of the other was strong. And neither offense was particularly inflammatory in comparison with the other."  Similarly, here, each theft was performed in nearly an identical manner and captured on surveillance video footage; thus, the evidence of Ayala's guilt was substantial in each of the offense and not weak relative to any other charge.

Accordingly, because Ayala cannot establish a reasonable probability that a favorable result would have occurred had his counsel moved for severance, he cannot establish that his counsel was ineffective.  (*Strickland v. Washington* (1984) 466 U.S. 668, 694 [To establish ineffective assistance of counsel, a defendant must establish prejudice, which is defined for this purpose as a reasonably probability of a more favorable result absent the attorney's errors.].)  Nor does anything in the trial record suggest that joinder actually prejudiced Ayala in a manner that rendered his trial grossly unfair. We note that the trial court instructed the jury to consider each count separately and return a separate verdict for each one.  (CALCRIM No. 3515; see also *Simon, supra*, 1 Cal.5th at pp. 129–131 [joinder of offenses did not result in a grossly unfair trial, in part because the trial court instructed the jury to decide each count separately].)  We therefore conclude this issue is not reasonably arguable.

## II.

### *Sufficiency of the Evidence*

Appellate counsel suggests as a possible issue that there is insufficient evidence of the force or fear element of the robbery charge. Ayala also argues there was insufficient evidence of robbery, stating that the security officers involved in his offenses were "never afraid" and that the officer testified falsely in order to "kick [him] out of their [lives]." We disagree and conclude the issue is not reasonably arguable.

"Robbery is 'the taking of personal property of some value, however slight, from a person or the person's immediate presence by means of force or fear, with the intent to permanently deprive the person of the property.' " (*People v. Jackson* (2016) 1 Cal.5th 269, 343.) A security guard may be a victim of robbery if they have a "special relationship with the store and had the duty and authority to retrieve its stolen property." (*People v. Bradford* (2010) 187 Cal.App.4th 1345, 1347–1348.) The fear element may be established by evidence of "express threats, by the display of a weapon, or by intimidation alone." (*People v. Collins* (2021) 65 Cal.App.5th 333, 340–341.) To establish the elements of robbery, "the People must prove that 'the victim was in fact afraid' . . . ." (*Id.* at p. 341.)

In reviewing the sufficiency of the evidence to support a conviction, we must determine " 'whether from the evidence, including all reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged.' [Citations.]" (*People v. Crittenden* (1994) 9 Cal.4th 83, 139, fn. 13.) This standard is deferential, and, as such, we must "review the whole record in the light most favorable to the judgment . . . ." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.) We

13

" 'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.] We must also 'accept logical inferences that the jury might have drawn from the circumstantial evidence.' [Citation.]" (*People v. Flores* (2020) 9 Cal.5th 371, 411.) On appeal, " '[w]e do not reweigh evidence or reevaluate a witness's credibility. [Citation.]' " (*People v. Scott* (2011) 52 Cal.4th 452, 487.)

Here, the security officer involved in the robbery offense was employed by a company providing security support to the Marshall's department store. When Ayala concealed and took property from the store on March 30, 2022, the security officer approached him as part of his "special relationship with the store" to recover stolen property. (*Bradford, supra,* 187 Cal.App.4th at p. 1347.) Thus, the security officer was a "victim" for the purposes of section 211.

Further, reviewing all reasonable inferences from the evidence in support of the judgment, as we must, we conclude there was substantial evidence that the security officer was in fear during the offense. The security officer testified that when he confronted Ayala about the stolen merchandise, Ayala put his hand in his pocket and stated, "Don't come close because if you do, I'm going to hurt you." Although the security officer did not tell police officers at the scene that he was in fear, he testified that he believed Ayala would hurt him if he got any closer. The security officer's testimony established evidence of a direct threat, as well as intimidation, sufficient to establish a logical inference of the fear element of robbery. (*Collins, supra,* 65 Cal.App.5th at pp. 340–341.)

Although Ayala urges us to conclude the security officer testified falsely and was not in fear during the offense, this argument was presented to the jury by defense counsel's cross-examination and closing argument. The jury

14

rejected this argument by finding Ayala guilty. Ayala's contentions relating to the officer's veracity amounts to no more than a request for us to reweigh the officer's credibility, which is not a function of this court on appeal. (*Scott, supra,* 52 Cal.4th at p. 487.) And although Ayala argues that he was not in possession of a weapon during the offense, "[i]t was not necessary for the jury to find that defendant was armed with or used a deadly weapon to find him guilty of robbery by force or fear." (*People v. Federico* (1981) 127 Cal.App.3d 20, 33.) Accordingly, we conclude that insufficient evidence of the robbery charge is not reasonably arguable.

III.

*Jury Instructions*

Appellate counsel raises as a possible issue whether all necessary jury instructions were given. However, appellate counsel does not suggest error as to any specific instruction. Nor does Ayala object to the jury instructions in his supplemental briefing.

From a review of the record, it appears the trial court gave the pattern jury instructions. Defense counsel did not object to any instruction, nor did counsel request additional instructions that were refused by the court. " '[T]he failure to object to an instruction in the trial court waives any claim of error unless the claimed error affected the substantial rights of the defendant, i.e., resulted in a miscarriage of justice, making it reasonably probable the defendant would have obtained a more favorable result in the absence of error.' [Citation.]" (*People v. Kopp* (2019) 38 Cal.App.5th 47, 66.) We perceive no violation of Ayala's substantial rights by the standard instructions provided by the trial court, and defense counsel did not object to any instruction. Any claim of error related to the jury instructions is therefore forfeited. (*People v. Lee* (2011) 51 Cal.4th 620, 638 ["failure to

15

request clarification of an otherwise correct instruction forfeits the claim of error for purposes of appeal"].)

IV.

*Circumstances in Aggravation*

Appellate counsel suggests as a possible issue there is insufficient evidence of the circumstances in aggravation to support the trial court's true findings at the bifurcated proceeding. As we discuss, because the trial court did not impose the upper term, the requirement that the trial court find the aggravating factors true beyond a reasonable doubt is inapplicable. We therefore conclude this issue is not reasonably arguable.

In 2021, the Legislature approved Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill No. 567), which made significant amendments to the determinate sentencing law under section 1170, former subdivision (b). (See Stats. 2021, ch. 731, § 1.3.) "Under this change in law, a trial court 'may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial.' " (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1038, fn. 10.) Relatedly, section 1170, subdivision (b)(6) now provides: "[U]nless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: ¶ The person has experienced psychological, physical, or childhood trauma,

16

including, but not limited to, abuse, neglect, exploitation, or sexual violence." (§ 1170, subd. (b)(6)(A).)

The California Rules of Court, which provide guidance to courts in imposing a sentence, were also amended to conform to the new legislation. Rule 4.420(d) now provides, in relevant part: "In selecting between the middle and lower terms of imprisonment, the sentencing judge may consider circumstances in aggravation or mitigation, and any other factor reasonably related to the sentencing decision. The court may consider factors in aggravation and mitigation, *whether or not the factors have been stipulated to by the defendant or found true beyond a reasonable doubt* at trial by a jury or the judge in a court trial." (Italics added.) Consistent with this rule, this court recently held that the imposition of the middle term does not require aggravating factors to be proven beyond a reasonable doubt under *Apprendi v. New Jersey* (2000) 530 U.S. 466. (*People v. Hilburn* (Cal. Ct. App., July 5, 2023, No. D080175) 2023 WL 4342646, at *9.)

Here, the trial court found true, beyond a reasonable doubt, three circumstances in aggravation, and Ayala admitted a fourth. However, the trial court did not rely on these factors to impose the upper term, instead exercising its discretion to impose the middle term on count 1. As clarified in California Rules of Court, rule 4.420(d), when the trial court elects not to impose the upper term, and instead selects between the middle term and lower term, it may rely on factors in aggravation "whether or not the factors have been stipulated to by the defendant or found true beyond a reasonable doubt." Although the circumstances in aggravation must have a sufficient factual basis to be relied upon, as discussed further infra, the beyond a reasonable doubt proof requirement set forth in section 1170 is not applicable. Accordingly, we need not analyze whether the circumstances in

17

aggravation were proven in conformity with the proof requirement of section 1170, subdivision (d)(1). Rather, we analyze below whether the trial court abused its discretion in relying on and weighing the circumstances in aggravation, and imposing the ultimate sentence it rendered.

V.

*The Trial Court's Sentencing Discretion*

"After a sufficient factual basis to support the circumstances in aggravation or mitigation is found, the court enjoys broad discretion in its sentencing determination. The trial court's sentencing decision is 'review[ed] for abuse of discretion.' [Citation.]. That 'discretion must be exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an "individualized consideration of the offense, the offender, and the public interest." ' [Citation.] The court abuses 'its discretion . . . if it relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision. [Citation.]' " (*Hilburn, supra,* 2023 WL 4342646, at *9.)

Here, the trial court considered, as circumstances in aggravation, that Ayala suffered a prison prior and committed the instant offense while on parole. These factors were proven by: (1) the certified records of conviction introduced into evidence at the bifurcated proceeding; and (2) Ayala's admission that he was on parole when the instant offense occurred. Ayala also admitted that his offense involved great violence, and the court relatedly found true an allegation that Ayala engaged in violent conduct within the meaning of California Rules of Court, rule 4.421(b)(1). Ayala's admission, and the trial court's finding, was supported by the fact that the instant offense was Ayala's second robbery conviction, and that he threatened to hurt the victim during the commission of the offense. Thus, the circumstances in

18

aggravation were supported by a sufficient factual basis to be relied upon by the trial court.

Although the trial court noted minimal circumstances in mitigation, the court interpreted Ayala's low level of education and childhood poverty to be a circumstance in mitigation that contributed to the commission of the crime. The court used this mitigating factor, along with the absence of a weapon in the commission of the offense, to dismiss the serious felony allegation that would have resulted in an additional five-year term. Aside from this minimal mitigation, the court found that none of the other "standard mitigating factors apply to [Ayala]," and appropriately exercised its discretion to select the middle term for count 1. This record does not demonstrate the trial court abused its discretion in weighing these aggravating circumstances. Quite the opposite—the record establishes the trial court carefully weighed the mitigating and aggravating circumstances to impose a sentence far more lenient than the sentence requested by the People. Accordingly, we conclude this issue is not reasonably arguable on appeal.

## VI.

### *Summary*

Review of the record pursuant to *Wende, supra*, 25 Cal.3d 436, and *Anders, supra*, 386 U.S. 738, including the possible issues referred to by Ayala and his appellate counsel, have disclosed no reasonably arguable appellate issues. We find that Ayala was adequately represented both at trial and on appeal.

19

## DISPOSITION

The judgment is affirmed.

O'ROURKE, Acting P. J.

WE CONCUR:

DO, J.

RUBIN, J.