Filed 1/22/25  P. v. Diaz CA4/3
Opinion following transfer from Supreme Court

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G059723 |
| v. | (Super. Ct. No. 18NF2130) |
| MARIO ALBERTO DIAZ, SR., | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Gary S. Paer, Judge.  Sentence vacated and matter remanded for resentencing.

Victoria H. Stafford, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

INTRODUCTION

Following a bench trial, the court found Mario Alberto Diaz, Sr., guilty of one count (count 1) of oral copulation of a child who is 10 years of age or younger (Pen. Code, § 288.7, subd. (b))[1], one count (count 2) of sexual penetration of a child who is 10 years of age or younger (*ibid.*), and five counts (counts 3 through 7) of lewdly committing a lewd or lascivious act upon a child who is under 14 years of age (Pen. Code, § 288, subd. (a)). The trial court sentenced Diaz to a term of 15 years to life on count 1, a consecutive term of 15 years to life on count 2, a consecutive upper term of eight years on count 3, and concurrent middle terms of six years on each of counts 4 through 7. Diaz's sentence amounted to a determinate term of eight years followed by a consecutive indeterminate term of 30 years to life with the possibility of parole.

In a prior opinion, *People v. Diaz* (Nov. 14, 2022, G059723) [nonpub. opn.], we affirmed the judgment. In February 2023, the California Supreme Court granted Diaz's petition for review and deferred further action in this matter pending disposition of a related case. In August 2024, the Supreme Court issued an opinion in that related case, *People v. Lynch* (2024) 16 Cal.5th 730 (*Lynch*), and subsequently transferred this matter to us with directions to vacate our prior decision and reconsider the cause in light of *Lynch*. Following transfer, Diaz filed a supplemental brief; the Attorney General did not.

We confirm our conclusion reached in our prior decision that the trial court exercised informed discretion by making the indeterminate terms on counts 1 and 2 run consecutive to the determinate term on count 3. The

_____

[1] All further statutory references are to the Penal Code.

2

issue on transfer from the Supreme Court is whether under *Lynch* we must remand the matter for resentencing on count 3 under the version of Penal Code section 1170, subdivision (b), in effect as of January 1, 2022 (amended section 1170(b)). We conclude, as we did in our prior opinion, that the evidence at trial established beyond a reasonable doubt all three circumstances in aggravation relied upon by the trial court in imposing the upper term on count three. We conclude, however, that remand is necessary because the record does not clearly indicate the trial court would have reached the same sentencing conclusion had it known that a sentence could not exceed the middle term absent findings beyond a reasonable doubt on circumstances in aggravation.

## FACTS

X.A. was six years old when Diaz moved into the home she shared with her father, mother, and two brothers. X.A. slept in a bedroom with her parents and one brother, the other brother slept in the living room, and Diaz had his own bedroom. Diaz took X.A. and her brothers to the movies, bought her games, presents and snacks.

Diaz's sexual abuse of X.A. began when she was seven years old. At the time, Diaz would take X.A. and her brothers to the movies and sometimes would watch movies on television with them in his bedroom. The bedroom was small — it had only one twin bed and a television — and Diaz would keep the room dark while the television was on. Diaz would position himself on the bed behind X.A. and would touch her waist and buttocks, lick her ear, and breath heavily. He would slip his hand down between her pants and underwear and touched her vagina. X.A. was shocked and did not know

what to do.  Diaz would kiss X.A. on the neck and tried to kiss her on the lips.
Diaz often engaged in this conduct.

On a separate occasion, Diaz got on top of X.A. when they were
both clothed and rubbed his penis in her vaginal area.  X.A. could feel Diaz's
hard penis rubbing against her.

When X.A. was eight years old, Diaz digitally penetrated her
vagina.  Diaz encountered X.A. in the kitchen and from there led her into his
bedroom.  He said in Spanish, "Hey, let's watch a movie," but instead pushed
X.A. onto the bed, shut the door, pulled down her pants, and stuck two
fingers into her vagina.  After a few minutes, Diaz let X.A. go.  sympathy

On a separate occasion, Diaz again encountered X.A. in the
kitchen, led her into his bedroom, pushed her onto the bed, and pulled her
pants down.  On this occasion, Diaz got down on his knees and licked X.A.'s
vagina.  X.A. tried to kick him off but he was heavier than she was and would
not stop.  After about three minutes he stopped and let her go.

On another occasion, Diaz had X.A. touch his penis.  Diaz again
led X.A. from the kitchen into his bedroom and closed the door behind them.
X.A. turned around and saw Diaz standing in front of the door with his penis
exposed.  Diaz told X.A. to touch his penis.  Sensing that X.A. was in shock,
Diaz grabbed her arm and used her hand to rub his penis.  X.A. was confused
because she trusted Diaz and viewed him as a friend.

Once when X.A. and her brother were watching a movie with
Diaz in his bedroom, Diaz rubbed his penis against X.A. buttocks.  Diaz and
X.A. were lying on the bed underneath a blanket, which allowed him to hide
his conduct; Diaz pulled down X.A.'s pants, placed his penis between her
buttock cheeks, and "slid[ed]" his penis "through as in up and down."  While
Diaz rubbed his penis between X.A.'s buttocks cheeks, he whispered in

4

Spanish in her ear, "Do you like it?" and rubbed his hardened penis against X.A.'s buttocks cheeks.

When X.A. was somewhere between the ages of seven and 11, Diaz told her to lick his penis. This occurred in Diaz's bedroom. X.A. was sitting on the bed. Diaz had closed the door and stood against it to block X.A. from leaving. Diaz faced X.A. and said, "Lick it." X.A. refused. Diaz told her, "I'll let you go if you lick it." She complied.

Although Diaz never threatened to harm X.A. if she told anyone, he would put his index finger to his lips and say, "shush, don't tell no one."

Once, when X.A. was about 10 years old, she agreed to go with Diaz to run an errand because he promised to buy her chips if she did. Diaz drove and X.A. sat in the back seat. Diaz pulled over and told X.A. to "come to the front [seat]." When she declined, he said he was not going to drive until she sat in the front. X.A. moved to the front passenger seat. She was wearing shorts, and on the drive, Diaz grabbed and squeezed her bare thigh.

Diaz last molested X.A. when she was 10 and a half years old. At that time, it was harder for Diaz to molest X.A. because another family with children had moved into the home. When the other children were in their room, Diaz called X.A. into his bedroom, pushed her onto the bed, pulled down her pants, and touched her vagina. He then pulled down his own pants, grabbed X.A.'s arm, and made her rub his penis.

The molestation stopped when Diaz moved out of the house. But X.A.'s trauma continued. From the time Diaz started molesting her, X.A. wet the bed, and was still wetting the bed at the time of trial, when she was 16 years old. She would have nightmares about Diaz touching her and would wake up with her left leg shaking. She started seeing a therapist in October 2017 but did not tell the therapist about what Diaz had done to her.

5

While in the seventh grade, X.A. started cutting her arms with razor blades; she felt sad and suicidal. A close friend noticed that X.A. was upset and her arms were cut. X.A. told her about what Diaz had done.

In March 2018, X.A. told her mother. X.A. was sobbing and could not be calmed down. The next day X.A. told her high school mental health counselor that six years' earlier a male roommate would lure her to his room and touch her inappropriately. X.A.'s parents took her to the police department to make a report. When the police had not contacted X.A. by May 2018, her parents went to the police department and complained. In May 2018, X.A. spoke with a police detective.

## DISCUSSION

### I. THE TRIAL COURT DID NOT ERR BY MAKING THE INDETERMINATE AND DETERMINATE TERMS CONCURRENT

Diaz contends the case must be remanded for resentencing because the trial court was unaware of its discretion to run the determinate term imposed on count 3 concurrently with the indeterminate terms imposed on counts 1 and 2. We disagree. The trial court was aware of its discretion to run the determinate and indeterminate terms concurrently but made the rational decision to make them consecutive instead.

#### A. *Background*

In sentencing Diaz, the trial court imposed a determinate sentence of eight years on count 3. This determinate sentence would be served first and would be followed by two consecutive indeterminate sentences of 15 years to life imposed, respectively, on count 1 and count 2. As for the other counts, the trial court imposed concurrent sentences.

6

In a sentencing brief, which the trial court acknowledged having read, the prosecution noted the court had discretion to run the terms concurrently but recommended that defendant be sentenced to a maximum possible term of consecutive life sentences on counts 1 and 2 with consecutive sentences on the remaining counts.  In addition, Diaz's counsel acknowledged at the sentencing hearing that the court had discretion to run the determinate and indeterminate sentences concurrently or consecutively.

The trial court agreed with the prosecution's sentencing brief and cited several reasons for the sentence.  For one, the court noted that Diaz targeted an "extremely vulnerable" victim from a "position of trust."  Another reason the court gave was Diaz planned his crimes and inflicted severe "psychological and emotional harm," as shown by the fact the victim wet her bed well into her teenage years.  Those facts warranted a denial of probation and consecutive sentences.

B.  *The Trial Court Was Aware of Its Discretion to Impose Consecutive or Concurrent Sentences*

When the trial court imposes a determinate sentence and an indeterminate life sentence, the court has the discretion to decide whether the terms will be served concurrently or consecutively.  (*People v. Galvez* (2011) 195 Cal.App.4th 1256, 1264.)  "'[A]bsent a showing to the contrary, the trial court is presumed to have known and followed the applicable law and to have properly exercised its discretion.'" (*Ibid.*, quoting *People v. Bradford* (2010) 187 Cal.App.4th 1345, 1355.)  The party challenging the sentence bears the burden of showing the sentencing decision was ""'irrational or arbitrary'"" and, to meet that burden, must "'affirmatively demonstrate that

7

the trial court misunderstood its sentencing discretion.'" (*People v. Lee* (2017) 16 Cal.App.5th 861, 866.)

Diaz has cited nothing from the record that meets his burden of affirmatively demonstrating the trial judge, who, we note, is quite experienced, was unaware of his sentencing discretion. To the contrary, at the sentencing hearing, the court stated it had read the prosecution's sentencing brief, which explained that the determinate and indeterminate sentences could be run concurrently. When imposing sentence on count 2, the court stated it had "selected" to make that sentence consecutive rather than concurrent. By using the word "selected" the court expressed its understanding that it alternatively could have selected the sentence on count 2 to be concurrent.

The trial court gave reasons for its decision to impose a determinate sentence on count 3 to be followed by consecutive sentences on counts 1 and 2: The court stated the crimes and their objectives were "predominantly independent" of each other, count 2 involved a separate crime against the same victim, and count 2 was committed at a different time and place from the crimes charged under count 1. In denying probation and imposing an aggravated term on count 3, the trial court found "the victim was very vulnerable and the defendant inflicted great emotional and psychological harm to the victim" and that Diaz's crimes "demonstrate some planning." The court stated the victim had been "to hell and back" and Diaz's acts "demonstrate[d] a high degree of callousness." (See Cal. Rules of Court, rule 4.425(b).) The very fact that the trial court made findings and comments shows it understood it had discretion to impose concurrent or consecutive sentences and exercised that discretion to impose consecutive sentences.

Count 3 was based on a violation of Penal Code section 288, subdivision (a), as were counts 4, 5, 6, and 7. The trial court made the sentences imposed under counts 4, 5, 6, and 7 run concurrently. By doing so, the court demonstrated it was aware of its discretion to make the sentence on count 3 also run concurrently but chose not to do so.

Diaz contends the trial court's statement "that term must be served first" in reference to the determinate sentence on count 3, as well as an apparent lack of rationale for imposing a consecutive sentence on count 3, is evidence the court was unaware of its discretion. The most plausible reading of the record, however, is the court was simply advising both parties on the correct application of the law; that is, ""the determinate term of imprisonment shall be served first . . . .""" (*People v. Galvez, supra*, 195 Cal.App.4th at p. 1264.)

## II. REMAND FOR RESENTENCING PURSUANT TO AMENDED SECTION 1170(b)

A. *Amended Section 1170(b) and* Lynch

The trial court imposed the upper term of eight years for Diaz's conviction under count 3 for committing a lewd or lascivious act upon a child who is under 14 years of age. (Pen. Code, § 288, subd. (a).) The court identified the following circumstances in support of the aggravated sentence: (1) X.A. was "very vulnerable"; (2) Diaz inflicted "great emotional and psychological harm" on X.A.; and (3) Diaz's conduct demonstrated planning.

Diaz was sentenced in December 2020. At that time, section 1170(b) granted the trial court discretion to impose the lower, middle, or upper prison term in the interest of justice. (Former § 1170(b), enacted by Stats. 2007, ch. 3, § 2, pp. 6–7; see *Lynch, supra*, 16 Cal.5th at p. 746.) In

9

2021, the Legislature amended section 1170(b), effective January 1, 2022, to state: "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)." (§ 1170(b); Stats. 2021, ch. 731, § 1.3; see *Lynch, supra*, 16 Cal.5th at p. 748.). Under paragraph (2) of amended section 1170(b), "[t]he court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (*Lynch, supra*, 16 Cal.5th at p. 748.)

The 2022 amendment to section 1170(b) applies retroactively to defendants, such as Diaz, whose judgments were not final on direct appeal at the time the statute took effect appeal. (*Lynch, supra*, 16 Cal.5th at p. 749.)

In *Lynch*, the California Supreme Court addressed the issues of whether, in reviewing a case in which former section 1170(b) was used, every circumstance in aggravation must have been found true beyond a reasonable doubt, whether error in sentencing entitles a defendant to an automatic remand or is reviewed for error, and, if it is reviewed for error, which standard of review applies. (*Lynch, supra*, 16 Cal.5th at pp. 742–743.) On those issue, the court held: "We hold that under the current [amended section 1170(b)] a Sixth Amendment violation occurs when the trial court relies on unproven aggravating facts to impose an upper term sentence, even if some other aggravating facts relied on have been properly established. The violation is prejudicial unless an appellate court can conclude beyond a reasonable doubt that a jury would have found true all of the aggravating

10

facts relied upon by the trial court to justify an upper term sentence, or that those facts were otherwise proved true in compliance with the current statutory requirements. If the reviewing court cannot so determine, applying the *Chapman* standard of review, the defendant is entitled to a remand for resentencing." (*Lynch, supra*, 16 Cal.5th at p. 768.)

In other words, "in a case where the judgment is not yet final, a sentence imposed under former section 1170(b) must be reversed and remanded unless the reviewing court concludes beyond a reasonable doubt that a jury [or court in a court trial], applying that same standard, would have found true *all* of the aggravating facts upon which the court relied to conclude the upper term was justified, or that those facts were otherwise proved true in compliance with the current statute." (*Lynch, supra*, 16 Cal.5th at p. 743, italics added.)

C. *Aggravating Circumstances Were Proven Beyond Reasonable Doubt*

Amended section 1170(b)(2) provides that when, as in this case, a bench trial is conducted, the trial court decides whether circumstances in aggravation have been proven beyond a reasonable doubt. Here, evidence of circumstances in aggravation was presented during trial and at the sentencing hearing to the trier of fact— the trial judge— and the trial judge found, based on the evidence, three aggravating circumstances justifying imposition of the upper term. As Diaz pointed out in the initial briefing, the trial judge did not state he had found the aggravating circumstances to be true beyond a reasonable doubt. But we, as the reviewing court, can and do conclude, beyond a reasonable doubt, that either the trial court did find each and every aggravating circumstance to be true beyond a reasonable doubt, or

11

would have so found if that were the burden of proof at the time of sentencing.

The evidence of the circumstances in aggravation of the offense charged in count 3 was overwhelming, unchallenged, and unrefuted. The evidence at trial established that X.A. was quite vulnerable. She was only seven years old when Diaz began to abuse her. He held a position of trust and authority: He took X.A. and her brothers to the movies, bought her games, presents and snacks.

The evidence at trial established beyond reasonable doubt that Diaz inflicted severe emotional and psychological harm on X.A. She started wetting the bed at the time Diaz began abusing her and continued to wet the bed at age 16. As a teenager, X.A. cut herself, felt sad all the time, and attempted suicide. She started seeing a therapist. She had nightmares about Diaz touching her and would awake from them with her left leg shaking. When X.A. told her mother, X.A. sobbed and could not be calmed down. Both at trial, at which she was subject to cross-examination, and at the sentencing hearing, X.A. testified to the emotional and psychological harm Diaz had inflicted on her.

The evidence at trial also established beyond a reasonable doubt that Diaz's sexual abuse of X.A. involved planning. Four people in addition to Diaz and X.A. lived in the two-bedroom house. Careful planning was necessary for Diaz to avoid detection. He was careful to intercept X.A. in the kitchen and lead her to his bedroom where he would abuse her in private. When watching movies in his bedroom, he turned the lights off, positioned himself behind X.A. on the bed, and covered himself and X.A. with a blanket to conceal his actions.

12

In the initial briefing, Diaz relied upon *People v. Lopez* (2022) 78 Cal.App.5th 459 (*Lopez*) disapproved on another ground in Lynch, *supra*, 16 Cal.5ᵗʰ at pp.768–769, to argue the prosecution "had no occasion to prove the aggravating factors beyond a reasonable doubt" and Diaz "had no opportunity to present evidence to contest them." In *Lopez*, the Court of Appeal noted that the former sentencing law did not require the prosecution to present at trial evidence directly relating to the aggravating circumstances, and the defendant would have had no incentive to present contradictory evidence. (*Id.* at p. 466.) For those reasons, the court concluded, "It would be entirely speculative for us to presume, based on a record that does not directly address the aggravating factors, what a jury would have found true in connection with these factors." (*Ibid.*)

As *Lopez* involved a jury trial, the trier of fact was different for the guilt and sentencing phases, and so it might have been speculative to presume what the jury would have found if it had been presented with evidence of aggravating circumstances. In the present case, unlike *Lopez*, a bench trial was held, at trial the prosecution did present evidence directly relating to the aggravating circumstances, and nothing in the record suggests Diaz would not have been permitted to present contradictory evidence. Diaz offered no witnesses at trial and, at the sentencing hearing, did not offer or make an offer of proof of any evidence relating to any aggravating circumstance. It is not speculative for us to presume what the trier of fact at the guilt phase would have found as to the aggravating circumstances because the same trier of fact presided over sentencing and found three aggravating circumstances, all of which were proved beyond a reasonable doubt.

13

We therefore conclude it is beyond a reasonable doubt the facts underlying every aggravating circumstance were or would have been found true beyond a reasonable doubt by the trial court.

D. *No "Clear Indication" the Trial Court Would Have Reached Same Sentencing Conclusion under Amended Section 1170(b).*

In *Lynch*, the California Supreme Court also concluded the amendments to section 1170(b) altered a trial court's sentencing discretion by circumscribing the trial court's previously—held broad authority to select among the low, middle, and high terms. (*Lynch, supra*, 16 Cal.5th at p. 773.) "The current statute narrows that authority by creating a presumption against the upper term, which may be overcome only if the required facts are properly proven and the court concludes that term is justified." (*Ibid.*)

If sentence under section 1170(b) was imposed before January 1, 2022, the effective date of the amendment, the question arises whether the trial court would have imposed the same sentence under amended section 1170(b). (*Lynch, supra*, 16 Cal.5th at pp. 743, 773.) The *Lynch* court concluded, in that situation, remand is the appropriate remedy unless the record "'clearly indicates'" that the trial court would have reached the same sentencing conclusion had it known that a sentence could not exceed the middle term absent findings beyond a reasonable doubt on circumstances in aggravation. (*Lynch, supra*, 16 Cal.4th at pp. 743, 771, 773–774 see *People v. Salazar* (2023) 15 Cal.5th 416, 431 (*Salazar*) ["unless there is a clear indication from the sentencing court that it would be idle to do so, remand for resentencing is required"].)

The length of the original sentence and related sentencing decisions, such as running consecutive sentences, imposition of middle or

14

upper term sentences, or declining to strike enhancements, is not sufficient to clearly indicate the trial court would reach the same sentencing conclusion on remand. (*Lynch, supra*, 16 Cal.5th at p. 776.) The *Lynch* Court observed, "'when the applicable law governing the defendant's sentence has substantively changed after sentencing, it is almost always speculative for a reviewing court to say what the sentencing court would have done if it had known the scope of its discretionary powers at the time of sentencing.'" (*Id.* at p. 776.)

The facts of *Lynch* demonstrate the "clearly indicates" standard is a high bar indeed. The trial court in *Lynch* found eight circumstances in aggravation and none in mitigation and emphasized, among other things, that the defendant "had committed repeated acts of violence; his use of multiple weapons in this case involved great violence, cruelty, viciousness, and callousness; and his criminal record demonstrated a serious danger to society." (*Lynch, supra*, 16 Cal.5th at p. 777.) In addition, the defendant was on parole when he committed the current crimes. (*Ibid*.) Based on those findings, the trial court found the upper term sentence to be "'appropriate.'" (*Ibid*.) The California Supreme Court concluded the record "certainly support[ed] a finding that the trial court acted within its discretion in choosing between the three available terms of punishment under the law as it stood at the time of sentencing." (*Ibid*.) However, the record did not clearly indicate how the trial court would have exercised its discretion "under the weight of the presumptive middle term maximum sentence that currently exists." (*Ibid*.) "Notably," the Supreme Court stated, "the [trial] court did not make the kind of definitive statements that we have found to clearly indicate it would not impose a lesser sentence under any circumstances." (*Ibid*.)

15

For examples of such definitive statements, the *Lynch* court cited to *People v. Flores* (2020) 9 Cal.5th 371, 432 (*Flores*) and *Salazar, supra,* 15 Cal.5th 416. These cases too demonstrate just how tough it is to meet the "clearly indicates" standard." In *Flores, supra*, at p. 432, the trial court stated when sentencing the defendant, "[Q]uite frankly, based on what I know about the defendant and based on what I know the defendant did . . . I think [the defendant] does fall into the category of the worst of the worst offenders thereby deserving the ultimate sentence of death" and it "believe[d] that in this situation the punishment does fit the crimes based on the senseless murders of four separate individuals, three being charged in the information in this case." (*Ibid.*) The trial court remarked the defendant "'show[ed] absolutely no remorse'. . . '[i]t's as if he has no soul,'" and, in the court's "'opinion[,] justice will be served' by a death sentence." (*Ibid.*) In *Flores* the California Supreme Court reasoned that because the trial court had explicitly stated it thought sentencing the defendant to death—the ultimate penalty—was just, it was clear the trial court would not have exercised its discretion to strike a firearm enhancement in the interest of justice if the court had such discretion at the time of sentencing. (*Ibid.*)

As to *Salazar, supra*, 15 Cal.5th 416, the *Lynch* court cited to following passage as another example of a definitive statement: "This case also does not present the circumstances in which the sentencing court announces that it is aware of forthcoming legislation and then explains how it would exercise its discretion under that legislation. The sentencing court's statements here do not provide this type of clear indication of intent." (*Salazar, supra*, 15 Cal.5th at p. 431, see *Lynch, supra*, 16 Cal.5th at p. 777.)

The trial court in the present case made the sentence on count 3 concurrent, found three circumstances in aggravation and none in mitigation, stated the victim had been "to hell and back" and Diaz's acts "demonstrate[d] a high degree of callousness," and agreed with the victim and her mother that Diaz was "a monster." Such forceful language indicates to us the trial court would sentence Diaz to the upper term on count 3 even under the limited discretion granted by amended section 1170(b). But we are constrained by *Lynch* to conclude that remand is required. The trial court in *Lynch* found eight aggravating circumstances and no mitigating ones, and the defendant had committed repeated acts of violence, used multiple weapons to commit acts of great violence, cruelty, viciousness, and callousness, and was a serious danger to society. Yet the Supreme Court nonetheless found it "speculative" to conclude that the trial court would have found aggravating circumstances "sufficiently weighty to 'justify' an upward departure from the legislative mandate for no more than a middle term sentence." (*Lynch, supra*, 16 Cal.5th at p. 777.)

The trial court in the present case gave no clearer an indication than did its counterpart in *Lynch*. So, given the facts of *Lynch*, we cannot say the trial court here clearly indicated it would have imposed the same sentence under amended section 1170(b).)[2]

---

[2] It is unlikely the trial court would have been aware of "forthcoming legislation" to amend section 1170(b) and had the foresight to explain how it would exercise its discretion under the amended law. (See *Salazar, supra*, 15 Cal.5th 431.) Senate Bill No. 567, the legislation by which section 1170(b) was amended, was introduced on February 28, 2021, two months after Diaz was sentenced. (Sen. Bill No. 567 (2020-2021 Reg. Sess.)

We therefore vacate the sentence and remand for resentencing. Under the full resentencing rule, "when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.'" (*People v. Buycks* (2018) 5 Cal.5th 857, 893.)

## DISPOSITION

The sentence is vacated and the matter is remanded for resentencing in accordance with amended section 1170(b).  The judgment is affirmed in all other respects.


SANCHEZ, J.

WE CONCUR:


MOORE, ACTING P. J.


GOETHALS, J.