[No. A125040. First Dist., Div. Five. Aug. 31, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD GARY BRADFORD, Defendant and Appellant.

1346

**COUNSEL**

Michael J. Hersek, State Public Defender, under appointment by the Court of Appeal, and Lisa D'Orazio, Deputy State Public Defender, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Catherine A. Rivlin and John H. Deist, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**NEEDHAM, J.**—A defendant shoplifts property from a store in a shopping mall and forcibly resists the mall security guards who apprehend him and recover the property. Can the guards be victims of a robbery when they are not the owners of the stolen property and are not directly employed by the store that owned the property? We conclude the answer in this case is yes, because the guards had a special relationship with the store and had the duty

and authority to retrieve its stolen property. We also reject defendant's claims that the jury instructions on this point were defective and that his midtrial motion for self-representation under *Faretta v. California* (1975) 422 U.S. 806, 834–835 [45 L.Ed.2d 562, 95 S.Ct. 2525] (*Faretta*) should have been granted.

## FACTS AND PROCEDURAL HISTORY

Defendant Richard Gary Bradford went to the Solano Mall in Fairfield where he stole six bottles of perfume from the front of a Victoria's Secret store. Nina Paiz, a shift manager for Victoria's Secret, noticed defendant walking out of the store with the perfume as she arrived for work. Defendant stood near a kiosk and then briefly returned to Victoria's Secret carrying a bag from another store with the stolen perfume inside. Paiz spoke to two mall security guards, Steven Conyers and Arthur Sandoval, and reported the theft.

After speaking to Paiz, Conyers and Sandoval followed defendant as he walked away from Victoria's Secret and into a nearby Mervyn's. They contacted defendant just inside the Mervyn's and asked if they could look inside the bag he was carrying. Defendant refused and Conyers told defendant he was being placed under citizen's arrest. Defendant pulled a knife from his pocket, waved it at the guards, and ran away.

Conyers and Sandoval chased defendant outside Mervyn's and Conyers tackled him. The two men wrestled on the ground and Sandoval saw defendant pull the knife from his pocket and try to stab Conyers. Sandoval grabbed appellant's hand and forced him to drop the knife. Another security guard joined the struggle and handcuffed appellant, who was turned over to Fairfield police officers.

Defendant was tried before a jury and convicted of two counts of second degree robbery with knife use enhancements and one count of assault by means likely to cause great bodily injury. (Pen. Code, §§ 211, 245, subd. (a)(1), 12022, subd. (b)(1).)[1] Conyers and Sandoval were the named victims of the robbery counts and Conyers was the named victim of the assault count. Appellant was sentenced to prison for an aggregate term of 12 years after admitting prior conviction allegations. (§§ 667, subd. (a), 1170.12, subds. (a)–(d).)

---

[1] Further statutory references are to the Penal Code.

## DISCUSSION

A. *Substantial Evidence Supported the Jury's Determination that Security Guards Conyers and Sandoval Were Robbery Victims*

Defendant argues that his robbery convictions must be reversed because the prosecution failed to show that Conyers and Sandoval were victims of a robbery. Noting that California law limits robbery victims to persons who have actual or constructive possession of the property taken (see *People v. Nguyen* (2000) 24 Cal.4th 756, 764 [102 Cal.Rptr.2d 548, 14 P.3d 221] (*Nguyen*)), defendant contends there was no substantial evidence that the security guards had the requisite right to control the perfume that was stolen from Victoria's Secret. We disagree.

■ Robbery is "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211; see *People v. Scott* (2009) 45 Cal.4th 743, 749 [89 Cal.Rptr.3d 213, 200 P.3d 837] (*Scott*).) A defendant who does not use force or fear in the initial taking of the property may nonetheless be guilty of robbery if he uses force or fear to retain it or carry it away in the victim's presence. (*People v. Gomez* (2008) 43 Cal.4th 249, 256, 264 [74 Cal.Rptr.3d 123, 179 P.3d 917]; *People v. Estes* (1983) 147 Cal.App.3d 23, 27 [194 Cal.Rptr. 909].)

■ A robbery cannot be committed against a person who is not in possession of the property taken or retained. (*Scott, supra,* 45 Cal.4th at p. 749.) Possession may be actual or constructive. (*Id.* at p. 750.) "A person who owns property or who exercises direct physical control over it has possession of it, but neither ownership nor physical possession is required to establish the element of possession for the purposes of the robbery statute." (*Id.* at p. 749.) " '[T]he theory of constructive possession has been used to expand the concept of possession to include employees and others as robbery victims.' " (*Id.* at p. 750, quoting *Nguyen, supra,* 24 Cal.4th at p. 762.)

■ In *Scott, supra,* 45 Cal.4th at page 746, our Supreme Court held that all employees on duty have constructive possession of their employer's property and may be separate victims of a robbery. That decision also recognized that persons other than employees may be robbery victims if they have a " 'special relationship' with the owner of the property such that the victim had authority or responsibility to protect the stolen property on behalf of the owner.' " (*Id.* at p. 750.) Formulated another way, the question is whether the prospective victim "may be expected to resist the taking." (*Id.* at p. 757.) Similarly, in *People v. Gilbeaux* (2003) 111 Cal.App.4th 515, 523 [3 Cal.Rptr.3d 835], the court concluded the evidence was sufficient to uphold

the defendant's convictions for the robbery of two janitors who were independent contractors of a grocery store owner. Although they were not employees on the business's payroll and were not responsible for handling the cash, they had a special relationship with the store and were akin to employees for purposes of the robbery statute. (*Ibid.*)

In this case, Conyers and Sandoval were not employees of Victoria's Secret. They did, however, have a special relationship with the store (and presumably, with other businesses in that mall) by virtue of their position as mall security guards. The evidence showed that they were employees of a company called Professional Security Consultants (PSC), which was contractually obligated to provide security services to businesses in the mall. PSC guards wore uniforms while on duty and were responsible for dealing with store thefts and other disturbances inside the mall. The guards were usually the first people the stores called in cases of theft, and Conyers was called to Victoria's Secret "all the time." Paiz, the shift manager of Victoria's Secret, testified that her store would call on mall security services when there had been a theft and that it relied on the security guards to contact suspects and recover the property if they could. As security guards employed by PSC, Conyers and Sandoval could be "expected to resist the taking" of property from Victoria's Secret, and as such were in constructive possession of the property stolen by defendant. (*Scott, supra*, 45 Cal.4th at p. 757.)

Moreover, Paiz specifically asked Conyers and Sandoval to assist Victoria's Secret in recovering its stolen property. This case is therefore akin to *People v. Bekele* (1995) 33 Cal.App.4th 1457 [39 Cal.Rptr.2d 797] (*Bekele*), disapproved on other grounds in *People v. Rodriguez* (1999) 20 Cal.4th 1, 13–14 [82 Cal.Rptr.2d 413, 971 P.2d 618], in which this court concluded that when the owner of stolen property specifically requests another's assistance in recovering that property, the request may confer sufficient authority over the property to constitute constructive possession. (*Bekele*, at pp. 1461–1463.) In *Bekele*, a city water department worker was operating a front-end loader with a coworker when he saw the defendant burglarizing his pickup truck as they passed it on the street. (*Id.* at p. 1460.) He told his coworker, " 'Let's stop,' " and " 'There is somebody in my truck.' " The coworker gave chase to the defendant, who had taken property from the truck and who pointed a gun at the coworker before fleeing. (*Ibid.*) The defendant was properly convicted of robbing the coworker, who, though he did not own the property taken, had been granted "implied authority" by the truck's owner to prevent its theft. (*Id.* at p. 1462.) In the case before us, Paiz granted Conyers and Sandoval the

authority to recover her store's property when she reported the theft to them, even though they did not possess that property before the theft occurred.[2]

Defendant argues that the relationship of the security guards to Victoria's Secret was too attenuated to regard them as robbery victims. The cases on which he relies are inapposite. In *People v. Ugalino* (2009) 174 Cal.App.4th 1060, 1064–1065 [94 Cal.Rptr.3d 858], a person who did not own or have a key to his roommate's locked safe containing marijuana was not an attempted robbery victim though he was forced to lie on the floor at gunpoint while the defendant demanded that he turn over the drugs. In *Nguyen, supra,* 24 Cal.4th at page 764, a visitor to a business who was present during a robbery was not a robbery victim because he did not have the right to possess or control the business's property. In *People v. Galoia* (1994) 31 Cal.App.4th 595, 597–598 [37 Cal.Rptr.2d 117], a person servicing a video game in a convenience store was not a victim of a robbery though he tried to apprehend a thief who took store merchandise. And in *Sykes v. Superior Court* (1994) 30 Cal.App.4th 479, 482–484 [35 Cal.Rptr.2d 571], the security guard of a neighboring business who did not have any special relationship to the store from which merchandise was taken was not a robbery victim. In none of these cases did the purported robbery victim have a specific contractual relationship to protect the business owner's property, nor were they given specific or implied authority to recover the property by the property owner. (Contrast *Bekele, supra,* 33 Cal.App.4th at pp. 1461–1463.)

Defendant also argues that the private security guards in this case are akin to police officers who encounter resistance when attempting to recover stolen property on behalf of a member of the public. He asserts that a police officer acting in that capacity cannot be the victim of a robbery, and claims that the security guards in this case should be treated no differently for analytical purposes. We are not persuaded. A law enforcement officer has a duty to protect the public at large, but under ordinary circumstances lacks a special relationship with a particular theft victim. In this case, by contrast, the guards did have a special relationship with the theft victim by virtue of their employment. The question under *Scott* is not whether a security guard sometimes performs functions similar to those of a police officer, but whether he or she has the requisite special relationship to the owner of stolen property in a particular case.

---

[2] In *Nguyen, supra,* 24 Cal.4th at page 762, footnote 2, the Supreme Court considered the *Bekele* decision and declined to decide whether the property owner's somewhat indirect remarks to his coworker were sufficient to confer constructive possession of the truck from which property was stolen. Paiz, by contrast, reported the theft to security guards who were responsible for dealing with store thefts. It can be readily inferred that she expected Conyers and Sandoval to attempt to recover the property and that, by making the report, she conferred upon them constructive possession of that property.

■  From the evidence presented at trial, a reasonable trier of fact could determine that Conyers and Sandoval had a special relationship with Victoria's Secret, along with the authority and responsibility to protect stolen property on its behalf. (See *Scott, supra*, 45 Cal.4th at p. 750.) Substantial evidence supported the jury's determination that a robbery was committed against both Conyers and Sandoval. (*People v. Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738]; see also *Jackson v. Virginia* (1979) 443 U.S. 307, 316–319 [61 L.Ed.2d 560, 99 S.Ct. 2781].)

**B.**  *Defendant Was Not Prejudiced by the Jury Instruction Defining the Circumstances in Which a Security Guard May Be a Robbery Victim*

In a related argument, defendant contends the jury instruction defining robbery did not accurately describe the circumstances in which a security guard who is not a store employee may be a robbery victim. We conclude the instruction was not misleading and did not prejudice defendant.

The court gave a version of CALCRIM No. 1600, which listed the elements of robbery and was modified to include the following language: "A mall security guard may be robbed if property of a store or business in the mall is taken even though he or she does not own the property and was not, at that moment, in immediate physical control of the property. If the facts show that the security guard was a representative of the owner of the property and the security guard expressly or implicitly had authority over the property, then that security guard may be robbed if property of the store or business is taken by force or fear."[3] Defendant argues this instruction was defective because it did not advise the jury it needed to find "a special relationship that imbued Conyers and Sandoval with authority or responsibility to protect Victoria's Secret property before it was stolen."

Under *Scott, supra*, 45 Cal.4th at page 750, a person has the right to control property for purposes of being a robbery victim if that person had a " 'special relationship' with the owner of the property such that the victim had authority or responsibility to protect the stolen property on behalf of the owner.' " The version of CALCRIM No. 1600 that was given to the jury in this case did not explicitly advise the jury that a "special relationship" between the guards and Victoria's Secret was necessary, but it did require a determination that the guards were "representatives" of the store with express

---

[3] This language is an adaptation of the standard used before the *Scott* decision to determine whether store employees qualified as robbery victims. (*Scott, supra*, 45 Cal.4th at p. 751.) After *Scott*, this test is no longer necessary with respect to employees because all employees on duty are deemed to possess their employer's property for purposes of the robbery statute. (*Id.* at pp. 746, 754–755.)

or implicit authority over the property. We agree with the Attorney General that more was required to prove the guards were "representatives" of Victoria's Secret than would have been needed to prove that they had a "special relationship" with that business. The instruction given was, if anything, more stringent than the requirements recognized in *Scott*, and any defect inured to appellant's benefit.

In any event, the main difference between the standard articulated in *Scott* and the instruction given is the latter's omission of the "special relationship" requirement. Having necessarily determined under the instruction given that Conyers and Sandoval were "representatives" of Victoria's Secret with express or implicit authority over the stolen property, there is no reasonable likelihood the jury failed to find a "special relationship" within the meaning of *Scott*. (See *People v. Moon* (2005) 37 Cal.4th 1, 29–30 [32 Cal.Rptr.3d 894, 117 P.3d 591] [failure to instruct on "willfulness" as component of premeditation did not require reversal when instruction on express malice required an intent to kill and necessarily encompassed finding of willfulness].)

### C.  *The Trial Court Properly Denied Appellant's Motion for Self-representation*

After the close of evidence, but before closing argument began, defendant filed a written request to represent himself pursuant to *Faretta, supra*, 422 U.S. 806. He contends the trial court erred in denying that motion, requiring reversal of the entire judgment. We reject the claim.

A criminal defendant may waive the right to counsel and represent himself at trial. (*Faretta, supra*, 422 U.S. at pp. 834–835.) The right of self-representation is absolute, but only if a request therefor is knowingly and voluntarily made and is asserted a reasonable time before trial begins. (*People v. Doolin* (2009) 45 Cal.4th 390, 453 [87 Cal.Rptr.3d 209, 198 P.3d 11].) Otherwise, requests for self-representation are addressed to the trial court's sound discretion. (*People v. Windham* (1977) 19 Cal.3d 121, 127–129 [137 Cal.Rptr. 8, 560 P.2d 1187] (*Windham*).) Among the factors to be considered when ruling upon a defendant's midtrial request for self-representation are the defendant's reasons for the motion, the quality of defense counsel's representation, the defendant's proclivity to substitute counsel, the length and stage of the proceedings, and the disruption or delay that might reasonably be expected to follow if the motion were granted. (*Ibid.*; see also *People v. Barnett* (1998) 17 Cal.4th 1044, 1104–1105 [74 Cal.Rptr.2d 121, 954 P.2d 384].) "[A] reviewing court must give 'considerable weight' to the court's exercise of discretion and must examine the total circumstances confronting the court when the decision is made." (*People v. Howze* (2001) 85 Cal.App.4th 1380, 1397–1398 [102 Cal.Rptr.2d 887].)

The trial court in this case correctly determined that appellant's *Faretta* motion was not timely for purposes of invoking an absolute right of self-representation. It gave defendant the opportunity to state his reasons for the motion, and defendant indicated that he felt he could speak better than his attorney and was generally unhappy with his attorney's performance. After hearing from defendant and ascertaining that defense counsel was ready to go forward with closing argument, the court denied the motion, noting that defense counsel had "done a fine job."

Considering the *Windham* factors and the record as a whole, the court did not abuse its discretion in requiring defendant to proceed with counsel. Although defendant seemed generally dissatisfied with the quality of his representation throughout the case, we agree with the trial court that counsel acted competently during the trial. Defendant had a history of discord with his attorneys based primarily on their rejection of strategies he wanted to pursue, and he had obtained an order under *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44] (*Marsden*) relieving his first appointed attorney. Defendant had also brought unsuccessful *Marsden* motions against his second attorney (who represented him at trial), as well as a motion to recuse the trial court itself. From the colloquies during the *Marsden* hearings and other portions of the proceedings, the court could reasonably determine that notwithstanding appellant's ability to speak cogently, he was likely to get sidetracked on tangential issues during closing argument and might use the argument as an opportunity to bring up matters that he felt had been neglected by counsel and that had not been placed in evidence. Additionally, appellant had spoken out inappropriately during the trial, stating aloud during Conyers' testimony, "That's a lie," further suggesting he might not comply with procedural rules during self-representation.

██ Defendant argues that we cannot rely on any of these circumstances to affirm the trial court's order because they were not explicitly cited by the trial court. We disagree. The court in *Windham*, though requiring the trial court to inquire into the reasons behind a defendant's untimely *Faretta* request, "decline[d] to mandate a rule that a trial court must, in all cases, state the reasons underlying a decision to deny a motion for self-representation which is based on nonconstitutional grounds." (*Windham, supra,* 19 Cal.3d at p. 129, fn. 6.) Instead, a trial court's exercise of discretion in denying an untimely *Faretta* motion is properly affirmed if substantial evidence in the record supports the inference that the court had those factors in mind when it ruled. (See *People v. Scott* (2001) 91 Cal.App.4th 1197, 1206 [111 Cal.Rptr.2d 318] ["[W]hile the trial court may not have explicitly considered each of the *Windham* factors, there were sufficient reasons on the record to constitute an implicit consideration of these factors."]; *People v. Perez* (1992) 4 Cal.App.4th 893, 904 [6 Cal.Rptr.2d 141] ["While the court did not specifically make [a

*Windham*] inquiry, we conclude there were sufficient reasons on the record for the court to exercise its discretion to deny the request."].)

Citing *People v. Butler* (2009) 47 Cal.4th 814, 826 [102 Cal.Rptr.3d 56, 219 P.3d 982] (*Butler*), defendant argues that our review of an order denying a *Faretta* motion must be based only on factors expressly cited by the court. *Butler* does not stand for that proposition. In *Butler*, the trial court had granted the defendant's timely pretrial motion for self-representation in a death penalty case, but then revoked the defendant's propria persona status based on his history of misconduct in jail and the security risks presented as a consequence. (*Id.* at pp. 820–823.) The trial court later granted a renewed *Faretta* motion, but revoked the defendant's propria persona status a second time after the defendant advised the court that he had not received all the discovery and the court concluded that as a consequence, defendant would not be ready to start the trial as scheduled. (*Id.* at p. 823.) The second revocation of propria persona status had been based on the defendant's limited ability to prepare for trial, not on his history of misconduct in jail; when it had granted propria persona status the second time, the court had indicated his jail misconduct was *not* a problem because the court could handle the defendant in the courtroom. (*Id.* at pp. 826–827.)

The record in *Butler* demonstrated that the trial court had not believed the defendant's out-of-court misconduct was a basis for revoking propria persona status the second time. The Supreme Court therefore declined to rely on that misconduct to uphold the order on appeal. (*Butler, supra,* 47 Cal.4th at pp. 825–827.) By contrast, our consideration of *Windham* factors not specifically cited by the trial court is simply a variation of the broader rule that absent a showing to the contrary, the trial court is presumed to have known and followed the applicable law and to have properly exercised its discretion. (See *People v. Martinez* (1998) 65 Cal.App.4th 1511, 1517 [77 Cal.Rptr.2d 492].) The *Windham* decision specifically contemplated that even without a recitation of reasons for denying an untimely *Faretta* motion, "there should be a sufficient record on appeal in such cases in order to sufficiently evaluate alleged abuses of discretion when motions for self-representation are denied." (*Windham, supra,* 19 Cal.3d at p. 129, fn. 6.)

Finally, defendant suggests that because he advised the court he would not need a continuance to present his closing argument, he had an absolute right to represent himself without regard to the *Windham* factors. We disagree. We are bound by *Windham* and the standard it established for *Faretta* motions brought after the commencement of trial. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Under that standard, the trial court did not abuse its discretion.

## DISPOSITION

The judgment is affirmed.

Jones, P. J., and Simons, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 15, 2010, S187057.