Filed 9/2/25  P. v. Tun CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B334466 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA502648) |
| v. | |
| TOMAS TUN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael Garcia, Judge.  Affirmed.

Debbie Yen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury found defendant and appellant Tomas Tun guilty of two counts of driving or taking a vehicle without consent. (Veh. Code, § 10851, subd. (a);[1] counts 1 & 2.)[2] In a bifurcated proceeding, the trial court found true that defendant had been convicted of five felonies within the meaning of Penal Code section 666.5. The court also found true that defendant had suffered prior convictions that are numerous and of increasing seriousness (Cal. Rules of Court, rule 4.421(b)(2)) and that he had served a prior prison or county jail term (Cal. Rules of Court, rule 4.421(b)(3)).

The trial court sentenced defendant to an aggregate term of four years to be served locally in county jail, comprised of the midterm of three years on count 1 and one year (one-third the midterm) on count 2. The court suspended fines and fees pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157.

In this timely appeal from the judgment, defendant contends that (1) the trial court committed instructional errors by failing to instruct the jury on posttheft driving and a lesser included offense; (2) the court abused its discretion by admitting evidence of defendant's uncharged acts; (3) there was insufficient evidence to support his conviction for count 1; (4) the cumulative effect of the alleged errors denied him a fair trial; and (5) the court improperly denied his request for self-representation.

We affirm.

---

[1]     All further statutory references are to the Vehicle Code unless otherwise indicated.

[2]     Defendant had also been charged with second degree burglary (Pen. Code, § 459; count 3), but the jury deadlocked on that count. The trial court declared a mistrial as to count 3 and later dismissed it pursuant to Penal Code section 1385.

# FACTS

I. *The People's Evidence*

    A.  <u>The December 7, 2021, motorcycle incident (count 1)</u>

On December 7, 2021, Los Angeles Police Department (LAPD) Officer Adrian Pop saw defendant driving a motorcycle[3] on the wrong side of the street. Officer Pop got behind defendant, who then went into the correct lane. Officer Pop conducted a traffic stop and approached the motorcycle. The motorcycle had no rear license plate. Officer Pop also observed that the motorcycle "had a lot of wires bulging out with electrical tape and the ignition was punched."

Based on his experience, Officer Pop testified that the condition of the motorcycle was "very strong evidence that it ha[d] been tampered with illegally since there is no legal possession of the motorcycle and they want to get it started without the key." A punched ignition is used to turn on a vehicle without the key that belongs to it. Given the appearance of the motorcycle, Officer Pop was "99 percent" certain it had been stolen.

Defendant told Officer Pop that the motorcycle belonged to his friend, Ezekiel, who had let him borrow it. Defendant said that his "girl" had told him not to drive the motorcycle because it was "probably stolen."

When Officer Pop accused defendant of hotwiring the motorcycle, defendant denied it but said that he had "put . . . the cables back together after they cut it." Defendant stated, "I knew

---

[3]    The vehicle at issue in count 1 is referred to variously in the record as a motorcycle, motorbike, dirt bike, and bike. For simplicity, we only refer to it as a motorcycle.

it was gonna be hot.  Like stolen, but I didn't know that they could report it."

B.  The May 3, 2022, truck incident (count 2)

Osborne Arnold (Arnold) owned a red pickup truck.  On April 30, 2022, at approximately 3:00 a.m., Osborne returned from work and noticed that the truck was missing.  Arnold, who still had the keys to the truck, immediately went to the police station and reported the truck stolen.

At approximately 8:40 a.m., on May 3, 2022, LAPD Officer Henry Felix was flagged down by a person who indicated that a red truck was blocking the flow of traffic and creating a traffic hazard.  Officer Felix and his partner found the truck and conducted a traffic stop.  Defendant was in the driver's seat and the sole occupant of the truck.  The truck was running.  Officer Felix observed that the steering column appeared to be broken and the fuse box was open.  The broken steering column was "a common characteristic of a stolen vehicle" to give "easy access to start the vehicle without the key."  The key in the ignition of the truck was not a vehicle key; rather, it appeared to Officer Felix to be a house key.  The ignition also appeared to be punched.  Based on his training and experience, Officer Felix concluded that the truck was stolen.

Arnold did not know defendant and had not given him permission to drive his truck to the location where it had been found.

C.  Uncharged acts

1.  *Attempted catalytic converter theft*

At approximately 2:30 a.m., on December 6, 2022, LAPD Officer Edwin Lozada heard a loud grinding noise and saw defendant under a Honda Odyssey minivan.  Defendant was

4

attempting to cut off the catalytic converter from the vehicle with a Sawzall power tool.

Melinda Escalon owned the minivan. She had not given anyone permission to damage the catalytic converter and had never seen defendant before.

### 2. *The Kia incident*

On April 29, 2023, LAPD Officer Richard Garcia conducted a stolen car investigation for a Kia. Officer Garcia encountered defendant standing in front of the Kia and "actively working on the engine bay." The keyhole of the driver's side door had been punched, which was an indication that the car had been broken into. Angle guard power tools, which are commonly used to take off parts on stolen vehicles, were on the front seat. Several tools, such as screwdrivers and pliers, used to steal vehicles, as well as shaved keys, were found in defendant's backpack.

After defendant was detained, he said that when he got out he would "get[] high again[,]" "steal another car[,]" and "[g]et busted for more cars."

## II. *Defendant's Evidence*

Defendant did not testify or call witnesses.

## DISCUSSION

### I. *Alleged Instructional Errors*

Defendant raises two claims of instructional error, which we review de novo. (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.)

#### A. <u>Failure to instruct on posttheft driving</u>

Defendant asserts that the trial court committed reversible error by failing to instruct the jury that it was required to find

5

that defendant was engaging in posttheft driving of the vehicle, an element of section 10851, subdivision (a).[4]

### 1. *Additional background*

The trial court instructed the jury with CALCRIM No. 1820, as follows:

"The defendant is charged in Counts 1 and 2 with unlawfully taking or driving a vehicle.

"To prove that the defendant is guilty of this crime, the People must prove that:

"1.  The defendant drove someone else's vehicle without the owner's consent;

"AND

"2.  When the defendant drove the vehicle, he intended to deprive the owner of possession or ownership of the vehicle for any period of time.

"A *taking* requires that the vehicle be moved for any distance, no matter how small."

### 2. *Relevant law*

Section 10851, subdivision (a) provides, in relevant part: "Any person who drives or takes a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle, . . . is guilty of a public offense . . . ."

---

[4]      The People argue that defendant forfeited this claim by failing to object to the instruction below.  While failing to object to an instruction or to request a modification generally forfeits a claim of instructional error on appeal (see *People v. Lee* (2011) 51 Cal.4th 620, 638), this general rule does not preclude our review where, as here, defendant's substantial rights are affected (Pen. Code, § 1259).

The statute "can be violated by a range of conduct, only some of which constitutes theft." (*People v. Lara* (2019) 6 Cal.5th 1128, 1135 (*Lara*).) A theft-based violation involves an unlawful taking, which "may be accomplished by driving the vehicle away." (*People v. Garza* (2005) 35 Cal.4th 866, 871.) This is distinguished from a posttheft driving violation, which "'consists of driving a vehicle without the owner's consent after the vehicle has been stolen, with the intent to temporarily or permanently deprive the owner of title or possession. Where the evidence shows a "substantial break" between the taking and the driving, posttheft driving may give rise to a conviction under . . . section 10851 distinct from any liability for vehicle theft.' [Citations.]" (*Lara, supra*, 6 Cal.5th at p. 1136.)

A trial court has a sua sponte duty to instruct the jury on all essential elements of a charged crime; the failure to do so is constitutional error. (*People v. Oyler* (2025) 17 Cal.5th 756, 838 (*Oyler*).) "Omitted element error is generally subject to harmless error analysis under *Chapman v. California* (1967) 386 U.S. 18 . . . (*Chapman*). [Citations.] [¶] Under this analysis, '[w]e must determine whether it is clear beyond a reasonable doubt that a rational jury would have rendered the same verdict absent the error' in omitting a necessary element of the offense. [Citation.]" (*Oyler, supra,* at p. 838.)

    3. *Analysis*

Defendant's jury was instructed only on the unlawful driving theory of the section 10851, subdivision (a) offense. As our Supreme Court found under very similar circumstances in *Lara, supra*, 6 Cal.5th 1128, "the instruction was incomplete: While the instruction specified driving as the alleged illegal act, it did not refer expressly to *posttheft* driving. Taking the

7

instruction on . . . section 10851 in isolation, the jury thus could theoretically have understood guilt to be proved if defendant stole the vehicle by driving it away from where the owner had parked it." (*Lara*, *supra,* at p. 1138.)

The error, however, was harmless beyond a reasonable doubt. (See *Lara*, *supra*, 6 Cal.5th at p. 1138 [applying the *Chapman* harmless error standard to "conclude that the trial court's failure to specify that unlawful driving must occur after the theft of the car, and not during, did not contribute to the jury's verdict"].)

As in *Lara*, "[i]n the absence of any direct evidence tying defendant to the theft—or indeed, any circumstantial evidence beyond defendant's later possession of the stolen vehicle—there was nothing to show he also drove it while effectuating the theft, and neither party so argued to the jury." (*Lara*, *supra*, 6 Cal.5th at p. 1138.) In his closing argument, the prosecutor emphasized that defendant had not been "charged with actually stealing" but rather with what is "colloquially refer[red] to as joyriding— driving around in a stolen car . . . ." We conclude that "[i]t is clear beyond a reasonable doubt that a rational jury would have rendered the same verdict had it received a complete instruction" that expressly referred to posttheft driving. (*Lara*, *supra,* at p. 1138.)

B. <u>Failure to instruct on lesser included offense</u>

Defendant also contends that the trial court erred in failing to instruct the jury, sua sponte, on the lesser included offense of attempted driving of a vehicle without consent as to count 2.

1. *Relevant law*

A trial court must instruct on a lesser included offense when there is substantial evidence that the defendant is guilty

only of the lesser offense. (*People v. Vargas* (2020) 9 Cal.5th 793, 827.) "The 'substantial evidence requirement is not satisfied by "'*any* evidence . . . no matter how weak,'" but rather by evidence from which a jury . . . could conclude "that the lesser offense, but not the greater, was committed."' [Citation.]" (*People v. Nelson* (2016) 1 Cal.5th 513, 538.) "Speculative, minimal, or insubstantial evidence is insufficient to require an instruction on a lesser included offense. [Citations.]" (*People v. Simon* (2016) 1 Cal.5th 98, 132.)

Because the failure to instruct on a lesser included offense is nonstructural state law error, we evaluate it under the harmlessness standard set forth in *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*). (*People v. Gonzalez* (2018) 5 Cal.5th 186, 195 (*Gonzalez*).) "That standard requires us to evaluate whether the defendant has demonstrated that it is "'reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.'" [Citations.]" (*Ibid.*)

        2. *Analysis*

Assuming without deciding that the trial court should have instructed the jury on attempted driving a vehicle without consent as to count 2,[5] any such error was harmless because it is

---

[5] Although neither party has cited a case so holding, we assume for the purpose of this appeal that attempted driving of a vehicle without consent is a lesser included offense of the completed crime under section 10851, subdivision (a). (See *People v. Speck* (2022) 74 Cal.App.5th 784, 793 ["Unlawfully driving a vehicle with the intent to temporarily or permanently deprive the owner of possession under . . . section 10851 is a specific intent crime"]; *People v. Hubbard* (2020) 52 Cal.App.5th 555, 567 ["An attempt to commit a specific intent crime is considered a lesser included offense of the completed crime"].)

not reasonably probable that defendant would have obtained a more favorable result in the absence of the error. (See *Gonzalez, supra,* 5 Cal.5th at p. 195.)

In closing argument, defense counsel repeatedly claimed that there was no evidence that defendant actually drove the vehicle at issue in count 2 and told the jury that driving was "an essential element" of the offense. In finding defendant guilty of the crime, however, the jury necessarily rejected the theory that defendant did not drive the vehicle but was, instead, merely sitting in it. Strong circumstantial evidence supported this conclusion. (See *People v. Bloom* (1989) 48 Cal.3d 1194, 1208 ["circumstantial evidence is as sufficient as direct evidence to support a conviction"].)

Defendant was found sitting in the driver's seat of Arnold's pickup truck three days after Arnold discovered the truck missing. Defendant was the sole occupant of the truck, which was running at the time defendant was seen in it and located in a completely different location than where Arnold had last left it. (See *People v. Hanggi* (1968) 265 Cal.App.2d Supp. 969, 972 [finding "ample evidence" to support former section 23102 conviction for driving while under the influence of alcohol; "From the combination of circumstances—defendant's sitting in a vehicle in the center of the street—behind the wheel—engine running—lights on, it can be inferred that defendant must have placed himself in such position, and that he accomplished this by driving the car to the place at which he was found"].)

"When assessing prejudice under the *Watson* standard, we 'focus not on what a reasonable jury *could* do, but what such a jury is *likely* to have done[.]'" (*People v. Wimer* (2022) 74 Cal.App.5th 113, 135.) Given the strength of the

10

circumstantial evidence that defendant drove the truck, the fact that defendant's jury was instructed only on an unlawful driving theory of section 10851, subdivision (a), and defense counsel's closing argument, we detect no reasonable probability that a jury would have only convicted defendant of attempted unlawful driving if instructed on the lesser included offense.

II. *Admission of Uncharged Acts*

Defendant claims that the trial court abused its discretion when it admitted, over defense objections, evidence regarding his uncharged acts—that is, his attempted theft of a catalytic converter on April 29, 2023, and his tampering with a likely stolen Kia on December 6, 2022.

A. <u>Standard of review</u>

We review a trial court's decision to admit evidence of uncharged acts for abuse of discretion. (*People v. Reyes* (2019) 35 Cal.App.5th 538, 550.) We will "not disturb the . . . ruling unless it was arbitrary, capricious, or made in a "'patently absurd manner that resulted in a manifest miscarriage of justice.'" [Citation.]" (*People v. Thomas* (2023) 14 Cal.5th 327, 358 (*Thomas*).)

B. <u>Relevant law</u>

Evidence that a defendant has committed crimes or acts other than those he is currently charged with is not admissible to prove the defendant's conduct on a specific occasion. (Evid. Code, § 1101, subd. (a).) However, evidence of uncharged crimes or acts is admissible to prove other relevant facts, such as the intent with which the perpetrator acted in the commission of the charged crimes, knowledge, and the absence of mistake or accident. (Evid. Code, § 1101, subd. (b).) "In other words, the statute allows the admission of evidence of criminal activity other

than the charged offense ""when such evidence is relevant to establish some fact other than the person's character or disposition."" [Citation.]" (*Thomas*, *supra*, 14 Cal.5th at p. 358.)

Before admitting uncharged act evidence, we must "examine whether the probative value of the evidence . . . is 'substantially outweighed by the probability that its admission [would] . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' (Evid. Code, § 352.)" (*People v. Ewoldt* (1994) 7 Cal.4th 380, 404.)

""The prejudice that [Evidence Code] section 352 "'is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence." [Citations.] "Rather, the statute uses the word in its etymological sense of 'prejudging' a person or cause on the basis of extraneous factors. [Citation.]" [Citation.]' [Citation.] In other words, evidence should be excluded as unduly prejudicial when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction. In such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose.'" [Citation.]" (*People v. Powell* (2018) 6 Cal.5th 136, 162–163 (*Powell*).)

C. Analysis

There was nothing arbitrary, capricious, or patently absurd about the trial court's decision to admit evidence of defendant's uncharged acts for the limited purpose of proving his intent, knowledge, and the absence of mistake or accident. (Evid. Code, § 1101, subd. (b).) A juror could infer from the evidence

regarding the uncharged acts that defendant had knowledge of the implements used to steal a vehicle or its parts, as well as the visual signatures of a stolen vehicle. This knowledge would tend to prove that, in the charged crimes, defendant knew the vehicles were stolen and engaged in posttheft driving with the specific intent to deprive the owner of possession. Furthermore, defendant's repeated close vicinity to stolen and/or tampered vehicles would tend to disprove that, in the charged crimes, defendant simply happened upon stolen vehicles by accident or mistake.

Resisting this conclusion, defendant argues that, because the uncharged acts related to theft, they were not sufficiently similar to the charged crimes, which were based on a driving theory of section 10851 liability. (See *Lara*, *supra*, 6 Cal.5th at pp. 1135–1136 [discussing the distinctions between theft-based and driving-based violations of section 10851].) We disagree. As discussed above, defendant's knowledge of the hallmarks of stolen vehicles as indicated by the theft-related uncharged acts was relevant to proving his violation of section 10851 based on posttheft driving. The charged and uncharged incidents were sufficiently similar for this purpose. (*People v. Felix* (2019) 41 Cal.App.5th 177, 185 ["In some cases, only a general similarity may be required, because the knowledge at issue can be derived from different experiences"]; *People v. Hendrix* (2013) 214 Cal.App.4th 216, 241 ["Whether similarity is required to prove knowledge and the degree of similarity required depends on the specific knowledge at issue and whether the prior experience tends to prove the knowledge defendant is said to have had in mind at the time of the crime"].)

Neither do we agree with defendant that the admission of his uncharged acts was unduly prejudicial. The uncharged acts were not ""'of such nature as to inflame the emotions of the jury,''"" such that the jury would be moved to use the evidence for illegitimate purposes. (*Powell*, *supra*, 6 Cal.5th at pp. 162–163.) Nor did the testimony regarding the uncharged acts, which took less than a day, consume an unreasonable amount of time.

III. *Sufficiency of the Evidence*

Defendant also argues that insufficient evidence supports his conviction for driving without consent in count 1.

A. Standard of review

In evaluating a challenge to the sufficiency of the evidence, we "review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) We "presume[] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]" (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)

B. Analysis

Substantial evidence supports defendant's conviction on count 1. Officer Pop testified he saw defendant driving the motorcycle, which had no rear license plate, a punched ignition, and wires "bulging out[.]" The appearance of the motorcycle provided Officer Pop with "very strong evidence that it ha[d] been tampered with illegally"; he was "99 percent" certain the motorcycle had been stolen. Defendant made numerous incriminating statements, first claiming his friend let him borrow

the motorcycle and later admitting that he knew it was stolen. He also admitted that his "girl" had warned him not to drive the motorcycle because it was "probably stolen." The jury could reasonably find from this evidence, beyond a reasonable doubt, that defendant drove the motorcycle after it had been stolen and without the owner's consent, with the intent to deprive the owner of possession for a period of time. (See § 10851, subd. (a); *Lara*, *supra*, 6 Cal.5th at pp. 1135–1136.)

Urging reversal, defendant contends no evidence existed that he drove the motorcycle without its owner's permission, as the owner was not called to testify and no associated stolen vehicle report was entered into evidence. But such evidence was not required. The jury could reasonably infer that defendant lacked the owner's consent to drive the motorcycle from Officer Pop's testimony, based on his training and experience, that the motorcycle's appearance strongly indicated it had been stolen, and defendant's admission that he knew the motorcycle was stolen. "It is of no consequence that the jury, believing other evidence or drawing other inferences, might have come to a contrary conclusion. [Citations.]" (*People v. Mendonsa* (1982) 137 Cal.App.3d 888, 891.)

As for defendant's claim that there was no evidence he engaged in posttheft driving, we again disagree. Defendant's admission that his "girl" had told him not to drive the motorcycle because it was "probably stolen" and that he knew it was "hot"— "[l]ike stolen"—constitute substantial evidence of driving the vehicle after it was stolen.

IV. *No Cumulative Error*

Defendant asserts that he was denied a fair trial in violation of the Fourteenth Amendment based on the cumulative

15

impact of the alleged errors. "Cumulative error is present when the combined effect of the trial court's errors is prejudicial or harmful to the defendant. [Citations.]" (*People v. Capers* (2019) 7 Cal.5th 989, 1017.)

Here, although we found error in one incomplete instruction and assumed error in the failure to instruct on a lesser included offense, we concluded that the errors were harmless under the applicable standards. And, aggregating these errors, we find no cumulative prejudice. "'Defendant was entitled to a fair trial but not a perfect one.' [Citation.] Because '[t]he few errors that occurred during defendant's trial were harmless, whether considered individually or collectively' [citation], we reject defendant's contention that his constitutional right to a fair trial was violated." (*People v. Camacho* (2022) 14 Cal.5th 77, 132.)

V. *Denial of Request for Self-representation*

Finally, defendant contends that his convictions should be reversed because the trial court improperly denied as untimely his request for self-representation.

A. Additional background

Defendant's trial began on August 4, 2023, with opening statements given on August 9, 2023. After the close of the People's case, on August 11, 2023, the trial court asked defense counsel if defendant had made a decision whether to testify. Defendant interjected, stating: "Your Honor, I've had a conflict of interest with [defense counsel] from the beginning. I want to exercise my *Faretta*[6] rights." Defendant told the court that he did not understand what his counsel was doing because she was

---

[6]     *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).

16

supposed to present evidence and he had minimal contact with her.

The trial court asked defendant if he was making a *Marsden*[7] motion, and defendant initially indicated that he was. Defense counsel told the court she was not certain that defendant understood what a *Marsden* motion was. Defendant responded, "I want to exercise my *Faretta* rights based on information that I gave her that she never used."

The trial court then denied defendant's request to represent himself, finding it to be untimely. The court stated: "For the record, we are in the middle of the trial. The People have rested. At this point, your request to represent yourself is not timely. [¶] Your attorney, . . . I will state for the record[,] has been working very hard on your behalf, with what evidence there is in this case and the attempts on her behalf to challenge the evidence that was presented in this case."

B. <u>Standard of review</u>

We review the denial of an untimely request for self-representation for an abuse of discretion. (See *People v. Burton* (1989) 48 Cal.3d 843, 854.)

C. <u>Relevant law</u>

"A criminal defendant has the constitutional right to forgo the constitutional guarantee of the assistance of counsel and to represent himself at trial. [Citation.]" (*People v. Kirvin* (2014) 231 Cal.App.4th 1507, 1515.) "The right of self-representation is absolute, but only if a request to do so is knowingly and voluntarily made and if asserted a reasonable time before trial begins. Otherwise, requests for self-representation are addressed

---

[7]    *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

to the trial court's sound discretion.  [Citation.]"  (*People v. Doolin* (2009) 45 Cal.4th 390, 453.)

In exercising its discretion to decide whether to grant an untimely motion for self-representation, "the trial court shall inquire *sua sponte* into the specific factors underlying the request thereby ensuring a meaningful record in the event that appellate review is later required."  (*People v. Windham* (1977) 19 Cal.3d 121, 128 (*Windham*).)  Factors to consider include, "the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion."  (*Ibid.*)

"The court in *Windham*, though requiring the trial court to inquire into the reasons behind a defendant's untimely *Faretta* request, 'decline[d] to mandate a rule that a trial court must, in all cases, state the reasons underlying a decision to deny a motion for self-representation which is based on nonconstitutional grounds.'  [Citation.]  Instead, a trial court's exercise of discretion in denying an untimely *Faretta* motion is properly affirmed if substantial evidence in the record supports the inference that the court had those factors in mind when it ruled.  [Citations.]"  (*People v. Bradford* (2010) 187 Cal.App.4th 1345, 1354–1355 (*Bradford*).)

D. <u>Analysis</u>

Applying these legal principles, we conclude that the trial court acted well within its discretion in denying defendant's untimely, midtrial request for self-representation.  (See *People v. Horton* (1995) 11 Cal.4th 1068, 1110 [a motion for self-

18

representation is untimely if it is "not asserted within a reasonable time prior to trial"].)

"[W]hile the trial court may not have explicitly considered each of the *Windham* factors, there were sufficient reasons on the record to constitute an implicit consideration of these factors. [Citations.]" (*People v. Scott* (2001) 91 Cal.App.4th 1197, 1206 (*Scott*).) The court noted the untimeliness of the request "in the middle of the trial." This indicates its consideration of the "stage of the proceedings" as well as "the disruption or delay which might reasonably be expected to follow the granting of such a motion." (*Windham*, *supra*, 19 Cal.3d at p. 128.) The court expressly evaluated "the quality of counsel's representation of . . . defendant," with an implicit consideration of "the reasons for the request[.]" (*Ibid.*) On this record, substantial evidence exists that the court properly considered the *Windham* factors and did not abuse its discretion in denying defendant's motion. (See *Bradford*, *supra*, 187 Cal.App.4th at pp. 1354–1355.)[8]

Even if the trial court had erred in denying defendant's motion, we would find such error harmless because there is no reasonable probability of a more favorable result in the absence of the error. (See *People v. Rivers* (1993) 20 Cal.App.4th 1040, 1050 (*Rivers*) [applying *Watson* harmless error standard].) "It is candidly recognized that a defendant who represents himself virtually never improves his situation or achieves a better result

---

[8] *People v. Rogers* (1995) 37 Cal.App.4th 1053 and *People v. Nicholson* (1994) 24 Cal.App.4th 584, upon which defendant relies heavily, predate *Scott*, *supra*, 91 Cal.App.4th 1197 and *Bradford*, *supra*, 187 Cal.App.4th 1345 and do not engage in the same analysis. Accordingly, we do not find that *Rogers* and *Nicholson* compel reversal.

than would trained counsel. [Citation.]" (*Rivers, supra*, at p. 1051.) The record reflects that defendant's counsel was competent and presented a vigorous defense. Although defendant was convicted of counts 1 and 2, the jury deadlocked on second degree burglary in count 3, which led to the dismissal of that count. It is extremely unlikely that defendant would have fared better if he had been permitted to represent himself.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, Acting P. J.
ASHMANN-GERST


We concur:



_____, J.
CHAVEZ



_____, J.
RICHARDSON


20