Filed 9/30/25  P. v. McCulley CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C102504 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F03538) |
| v. | |
| LESLIE MARIE McCULLEY, | |
| Defendant and Appellant. | |

Defendant Leslie Marie McCulley appeals following her conviction for premeditated attempted murder of a police officer.  She challenges the trial court's imposition of the maximum restitution fine of $10,000 (Pen. Code,[1] § 1202.4, subd. (b)).  She argues (1) the fine is excessive and (2) citing to *People v. Dueñas* (2019) 30 Cal.App.5th 1157, alleges that the court's imposition of the restitution fine violated the Eighth Amendment's excessive fines clause.  Finding no merit in either contention, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

We summarize the pertinent facts from our prior opinion in *People v. McCulley* (Apr. 21, 2015, C075333) (nonpub. opn.) (*McCulley*) affirming defendant's judgment.

In May 2012, Sacramento police officers engaged in a high-speed pursuit of a stolen sedan with four occupants.  The driver of the sedan drove at excessive rates of speed

---

[1] Undesignated statutory references are to the Penal Code.

1

through residential neighborhoods and a crowded schoolyard, and police twice called off the pursuit due to public safety concerns. At one point, the car abruptly stopped, and two men jumped out. A short time later, officers found the sedan abandoned. (*McCulley*, *supra*, C075333.)

Another officer saw defendant and a man, whom defendant later identified as her boyfriend Lucas Webb, walking rapidly down a nearby street. When the officer approached them, Webb "immediately became upset and protested that he was not on parole." Webb made furtive movements with his hands and the officer drew his weapon for safety. Webb fled and the officer followed with defendant trailing the officer. A canine officer arrived and took over the chase. While defendant struggled with other officers who attempted to take her into custody, several gunshots were heard. Webb shot and severely injured the canine who pursued him into some shrubbery, and then Webb pointed his gun at the canine officer and shot. The officer returned fire, killing Webb.

When questioned at the scene, defendant initially said she had been driving the sedan during the pursuit and that only she and Webb were in the car. She later admitted that two other passengers had been in the car. Her hands tested positive for gunshot residue. (*McCulley*, *supra*, C075333.)

During a subsequent police interview, defendant said Webb had previously killed an officer, "had an outstanding warrant and never complied with police efforts to initiate a contact," an attitude she shared. Defendant later admitted that Webb had been driving during the entire chase, which she concealed from officers to keep Webb from going to prison. She also initially claimed that she had brought the gun with them on the trip, but once she was informed Webb had died, she said the gun was Webb's. When questioned about the gunshot residue on her hands, defendant claimed she had accidentally fired the gun during the chase. She took it from Webb when he was grabbing for it to prevent him from using it. She then turned around while waving the gun and told the protesting passengers to quiet down. After they had lost the police, she told the passengers to get out

2

of the car. While abandoning the car, she accidentally shot out the rear passenger-side window after which Webb took the gun back from her.

In multiple jail phone calls, defendant said she stayed with Webb to help him when she told their passengers to get out, that she had taken the gun from Webb to prevent him from using it, and that she had accidentally fired the gun while abandoning the car. During one call she recounted telling Webb, " 'You['re] always talkin' about, . . . you got to get that motherfucker out Luc[a]s or throw it to me and I will.' " In another call she clarified that she had told Webb he was always saying he was going to " ' "shoot him in the face" ' " and when the cops approached them, she looked at Webb and said, " ' "Are you goin' to pull the motherfucker? If you don't want to pull the motherfucker, you better throw it back to me 'cause I'll handle that shit." ' " She later said she told Webb, " ' "Go. You know what to do. If you don't do it throw it back to me and I'll get rid of 'em." ' " (*McCulley*, *supra*, C075333.)

One of the passengers in the sedan first told officers that during the chase defendant looked as if she were pointing the gun at the pursuing police car, and he believed that she encouraged Webb not to stop. In a second interview, he made the same assertions and said she might have said something about shooting the police. At trial, the passenger testified inconsistently that defendant did not point the gun toward the pursuing police car and did not announce an intention to shoot at the police officers; he also testified that "it was Webb, and not defendant, who said they were not going to stop during the pursuit." (*McCulley*, *supra*, C075333.)

The second amended information alleged defendant committed willful, premeditated, and deliberate attempted murder of a police officer (§§ 187, subd. (a), 664), operating a vehicle with the intent to evade the police (Veh. Code, § 2800.2, subd. (a)), being a felon in unlawful possession of a firearm (§ 29800, subd. (a)(1)), and unlawfully purchasing a stolen vehicle (§ 496d, subd. (a)). The information further alleged a principal was armed with a firearm (§ 12022, subd. (a)(1)), as to the attempted murder count, and defendant personally

3

used a firearm (§ 12022.5, subd. (a)), as to the evading police count.  The information also alleged defendant had served a prior prison term (§ 667.5, subd. (b)).

The jury found defendant guilty on all counts and the firearm allegations to be true.  The trial court found the prior prison term enhancement to be true.  The trial court imposed an aggregate prison term of 15 years to life plus 16 years and 4 months, which included a one-year prior prison term enhancement.

The trial court held a restitution hearing and ordered defendant to pay $65,441.41 in direct victim restitution.  The court also ordered defendant to pay a $10,000 restitution fine (§ 1202.4, subd. (b)); a $10,000 parole revocation fine (§ 1202.45), which it suspended; a $340.01 main jail booking fee and a $62.09 main jail classification fee (Gov. Code, § 29550.2); a $160 court operations assessment (§ 1465.8, subd. (a)(1)); and a $120 court facilities assessment (Gov. Code, § 70373).

In May 2024, the trial court received a notice from the Department of Corrections and Rehabilitation that identified defendant as eligible for resentencing under section 1172.75.  The trial court struck the now-invalid prior prison term enhancement and imposed an aggregate term of 15 years to life plus 15 years and 4 months.

Defense counsel requested the court reduce defendant's restitution fines to the statutory minimum of $300 (§ 1202.4) because "there [wa]s a large restitution amount . . . that should be a priority."  Defendant filed a sentencing memorandum stating defendant had worked in the prison's dental program for seven years, earned a certificate in dental technology for her performance in the dental prosthetics department, completed a vocational course on creating natural dentures, completed 15 training modules for palliative care, volunteered in the hospice unit, and became a certified customer service specialist.  Counsel argued defendant "has trained in skills that she'll have when she gets out so she can work in the dental field."

The trial court declined to reduce the amount of the restitution fine.  Defense counsel then objected under *People v. Dueñas*, *supra*, 30 Cal.App.5th at page 1157 and due process

4

grounds based on defendant's lack of ability to pay. Defense counsel argued defendant lacked the ability pay the restitution fine because she earned only pennies for the hours she worked in prison. The trial court again denied defendant's request. It reimposed the $10,000 restitution fine, finding the restitution fine was commensurate with the seriousness of the offense and defendant appeared "perfectly capable of working in prison." To support its finding the trial court cited defendant's brief and documents submitted to the court at resentencing, which indicated defendant was working in the prison at the time of resentencing. The trial court further found defendant had the opportunity and ability to pay because "she does work in prison."

Appellant timely appealed.

DISCUSSION

Defendant claims the trial court violated her constitutional rights when it imposed the maximum restitution fine, arguing the fine is excessive and that she established her inability to pay it. (U.S. Const., Amend. VIII; Cal Const., art. I, § 17.)

The determination of whether a fine is excessive for purposes of the Eighth Amendment is based on the factors set forth in *United States v. Bajakajian* (1998) 524 U.S. 321 (*Bajakajian*). (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2005) 37 Cal.4th 707, 728-729 [applying Eighth Amendment analysis to both defendant's federal and state excessive fines claims].)

"The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." (*Bajakajian*, *supra*, 524 U.S. at p. 334.) "[A] punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." (*Ibid*.)

"The California Supreme Court has summarized the factors in *Bajakajian* used to determine if a fine is excessive and in violation of the Eighth Amendment as including: '(1) the defendant's culpability; (2) the relationship between the harm and the penalty; (3)

5

the penalties imposed in similar statutes; and (4) defendant's ability to pay. [Citations.]' (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.*, *supra*, 37 Cal.4th at p. 728; see [*People v.*] *Gutierrez* [(2019)] 35 Cal.App.5th [1027] 1040 (conc. opn. of Benke, J.).) While ability to pay may be part of the proportionality analysis, it is not the only factor. (*Bajakajian*, *supra*, 524 U.S. at pp. 337-338.)" (*People v. Aviles* (2019) 39 Cal.App.5th 1055, 1070.) We review the excessiveness of a fine challenged under the Eighth Amendment de novo. (*Aviles*, at p. 1072.)

Here, the *Bajakajian* factors weigh against defendant. We conclude the restitution fine was not grossly disproportionate to the level of harm defendant caused and her culpability. She was convicted of willful, premeditated, and deliberate attempted murder of a police officer while a principal was armed with a firearm, operating a vehicle with the intent to evade the police while personally using a firearm, being a felon in unlawful possession of a firearm, and unlawful purchase of a stolen vehicle. The trial court imposed a sentence of 15 years to life plus 15 years 4 months in prison. There is a proportional relationship between the harm and the penalty. (§ 1202.4, subd. (a)(1) [the purpose of the restitution fine is to compensate victims for economic loss as a result of the commission of a crime]; *Bajakajian*, *supra*, 524 U.S. at p. 336 ["[J]udgments about the appropriate punishment for an offense belong in the first instance to the [L]egislature"].)

Defendant's contention that the prosecution did not establish an ability to pay, citing *People v. Dueñas*, *supra*, 30 Cal.App.5th at pages 1164, 1168-1169 is similarly without merit. Here, there is substantial evidence of defendant's ability to pay. The trial court reviewed and considered defendant's brief and documents submitted to the court at resentencing, which evidenced ability to work in the dental field, which she had done for seven years while in prison. Based on her dental training, defendant is considered to have "special skills" and may earn between $29 to $48 per month. (Department of Corrections and Rehabilitation Operations Manual, ch. 5, art. 12, §§ 51120.6 & 51120.7 (2024).) Defense counsel conceded at resentencing that defendant "has trained in skills that she'll

6

have when she gets out so she can work in the dental field." This demonstrated defendant's potential to increase her existing ability to pay if she is released on parole. The People have met their burden to demonstrate defendant's ability to pay. Under these circumstances, the trial court did not abuse its discretion nor violate defendant's constitutional rights in imposing the maximum restitution fine.

Defendant also suggests the court abused its discretion because it did not expressly state direct restitution is required to be paid before restitution fines under section 1202.4. The court was not required to do so. Absent a contrary showing, "the trial court is presumed to have known and followed the applicable law and to have properly exercised its discretion." (*People v. Bradford* (2010) 187 Cal.App.4th 1345, 1355.) Defendant has not met her burden of demonstrating the trial court erred.

### DISPOSITION

The judgment is affirmed.


/s/
WISEMAN, J.*

We concur:


/s/
EARL, P. J.


/s/
ROBIE, J.

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.